# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

| | |
|---|---|
| UNITED STATES SECURITIES AND EXCHANGE COMMISSION,<br>        Plaintiff,<br>v.<br><br>STEFAN H. BENGER, SHB CAPITAL, INC., JASON B. MEYERS, INTERNATIONAL CAPITAL FINANCIAL RESOURCES, LLC, PHILIP T. POWERS, HANDLER, THAYER & DUGGAN, LLC, FRANK I. REINSCHREIBER, and GLOBAL FINANCIAL MANAGEMENT, LLC. CTA WORLDWIDE SERVICES, SA, and STEPHAN VON HASE,<br><br>        Defendants. | No. 09 CV 676<br><br>Magistrate Judge Jeffrey Cole |

**MEMORANDUM OF PHILIP POWERS IN OPPOSITION TO SEC'S MOTION TO STRIKE EXPERT TESTIMONY OF DOUGLAS BRANSON**

Expert testimony is relevant if it will "assist the trier of fact with its analysis on *any* of the issues." *Smith v. Ford Motor Company,* 215 F.3d 713, 718 (7th Cir. 2000) (emphasis added). Expert testimony need not embrace the ultimate issue; rather, it "need only be relevant to evaluating a factual matter." *Id*. at 720. The securities laws and the customs and practices of the participants in the private placement of securities are not something the average juror would encounter in their normal day-to-day lives. This is just the sort of case where expert testimony can be invaluable to the jury. Furthermore, it is noteworthy that the SEC, which carries the burden of proof on all issues, has failed to designate any expert to assist the jury in winding its way through what is, admittedly, a complicated business—the private placement of securities by foreign and domestic companies in an off-shore transaction. Accordingly, it is no wonder that they attack Powers' expert, Professor Douglas Branson.

Contrary to what counsel for the SEC represented in court, the SEC's Motion to Strike Expert Testimony of Douglas Branson (and by implication bar his testimony at trial) isn't just based solely on relevance. It is really a full blown *Daubert*[1] motion which belittles Professor Branson's experience and mocks his conclusions and opinions.

Professor Branson is eminently qualified, his opinions are well-reasoned and relevant and do not invade the province of the court by offering legal conclusions. Powers is entitled to present Professor Branson's testimony on the differences between a broker and an escrow agent; his assertions that he was employed by an escrow agent and was not acting as a broker; how a private placement is conducted and what constitutes the total mix of disclosures; and that his actions were consistent with custom and practice in the industry, which goes to the issue of recklessness. The SEC's Motion to Strike should be denied in its entirety.

## FACTUAL BACKGROUND

The relevance of expert witness testimony cannot be evaluated in a vacuum. Basically, the SEC's case boils down to (i) a single fraud claim, albeit cloaked in several different legal theories, and (ii) a failure to register as a broker under Section 15(a) of the Exchange Act of 1934. The essence of the fraud claim is that the defendants failed to disclose to the purchasers how the proceeds of the sale (or as the SEC likes to call it—commissions) were used to pay the sales agents. The SEC focuses specifically on the Stock Purchase Agreement ("SPA") between an issuer and a purchaser as the misleading document. The SEC has also portrayed the offerings in virtually every pleading as a boiler room scam[2] to create a more inflammatory atmosphere, but

---

[1] *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 589-91 (1993).

[2] There is no evidence in the factual record to support the claim that Powers had any involvement with the actual sales and each of the UK citizens who purchased stock that was delivered through the HTD escrow testified they had no knowledge of Powers or any contact with him except for a single letter of transmittal that accompanied their stock certificate.

there is scant evidence to support that claim and the relief sought has nothing to do with this allegation.

The SEC makes two specific claims against Powers. First, that he aided and abetted the other defendants in violating Section 10(b) and Rule 10(b)5 and, second, that he should have registered as a broker under Section 15(a) of the Exchange Act of 1934 (Amended Complaint Counts IV and V respectively; Doc. 238). Powers denies each allegation. The aiding and abetting charges center on whether he had a duty of inquiry and a duty to disclose certain information regarding the issuers, as well as whether his actual conduct rises to the level of recklessness that is at issue in this case since he had no direct contact with any purchaser.

Of course, the SEC has a different view of the facts. Powers maintains that he was the manager of the escrow service provided by his employer, Handler, Thayer & Duggan, LLC ("HTD"), a former defendant in this case. HTD was the named escrow agent in each case and Powers was designated by HTD to manage each escrow as a disclosed agent. By invoking a duty of inquiry and duty of disclosure on Powers, the SEC is essentially transforming Powers into the Chief Compliance Officer for all issuers[3] and the other defendants, holding him responsible for making sure that each of the offerings were done in compliance with U.S. law. The SEC is grasping at straws by relying on a variation of the shingle theory of liability to assert that because Powers was the only lawyer involved in the offerings, he must have been responsible for compliance. Powers vehemently opposes this misstatement of his duties and role in the

---

[3] HTD only acted as escrow agent for China Voice Holdings Corp.; Integrated Biodiesel Industries, Ltd.. (a foreign company); Pharma Holdings, Inc.; Biomoda, Inc. and World Energy Solutions, Inc. These are the only companies with which Powers had any direct involvement. The escrow agent for the other issuers identified in the Amended Complaint was Global Financial Management, LLC ("Global"), which was solely managed by Defendant Reinschreiber. While Powers was a member of Global, he exercised no management authority and did not receive a single penny of compensation or distributions from Global.

transactions at issue. Powers was merely serving as an escrow agent with administrative responsibilities.

The record which the SEC has developed to meet its burden of proof is modest. While reams of paper and millions of bytes of emails and computer records have been produced by the defendants, the SEC continues to focus on just one document as the linchpin of its case--the SPA. The SEC contends that the SPA is misleading because it does not disclose the use of proceeds or the amounts the issuers paid to third parties to solicit purchasers. HTD's compensation was fully disclosed. In doing so the SEC opts for the "in your face" method of disclosure which would be characterized by the delivery of a transaction specific offering memorandum, instead of the "total mix" of information favored by Professor Branson.

The SEC deposed each of the individual defendants, three of whom gave testimony (Benger, Von Hase and Powers) and two who asserted their Fifth Amendment rights (Reinschreiber and Meyers). The SEC also deposed nine individuals in London. Seven had purchased stock from one or more of the issuers, one did not purchase any stock, and one person was the daughter of a woman who purchased stock but received a full refund from the issuer. The only citizen of the U.K. with whom Powers had any contact aside from receiving a cover letter with his stock certificate was the daughter of the woman Powers helped receive a full refund of her purchase price. In short, Powers had no contact with any purchaser who was deposed.

**ARGUMENT**

The SEC's motion uses condescending rhetoric and insults in an attempt to disqualify the expert testimony of Professor Branson but fails to make any relevant legal arguments to support its claims. The SEC's argument is divided into four parts: (1) the role of the Court as the

gatekeeper of expert testimony; (2) Branson's legal arguments are improper; (3) Branson's testimony regarding the securities profession is improper; and (4) Branson's characterization of certain evidence is irrelevant and improper. Each of these arguments should be rejected.

   I.   **The Court as Gatekeeper: The Legal Standard Applicable to a *Daubert* Analysis.**

Rule 702 of the Federal Rules of Evidence, based on the *Daubert* decision, codifies the standards for what constitutes acceptable expert testimony. Rule 702 has been summarized as follows:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

*Ervin v. Johnson & Johnson, Inc.,* 492 F.3d 901, 904 (7th Cir. 2007).

The SEC's Motion to Strike attacks Professor Branson's qualifications suggesting his opinions are "self proclaimed musings about the securities profession . . ." (Pltf.'s Mem. in Supp. Mot. to Strike ("Pltf.'s Mem.") at 1) or "heretofore unwritten principles of escrow agency . . ." (Pltf.'s Mem. at 2), and picks out statements in the report which were conceded by Powers in open court (*e.g.*, this Court does not have jurisdiction with respect to the IBI offering). Going further, the Motion attacks the factual sufficiency of his opinions and the relevance to this case. This is the essence of a *Daubert* motion.

Powers agrees with the SEC that the Court is gatekeeper in deciding who can testify as an expert and in this role the Court is allowed to consider evidence that will provide guidance regarding the facts of the case. Rule 702 of the Federal Rules of Evidence provides some

guidance regarding the admissibility of expert testimony, but as the court in *Abrams v. Van Kampen Funds, Inc*. stated:

> The flexibility of the inquiry is particularly important to keep in mind when the field of expertise is not a scientific one as in *Daubert*. In determining the reliability of the proffered testimony, the focus must be on the soundness of the methodology that is used, not on whether the conclusions that the expert reaches are correct.

*Abrams v. Van Kampen Funds, Inc*., Case No. 01 C 7538, 2005 U.S. LEXIS 531, *17-18 (N.D. Ill. Jan. 13, 2005) (citations omitted).

In *Cooper Tire and Rubber Co. v. John Booth Farese* the court reinforced this standard:

> The primary issue for the court to determine is whether an expert who is qualified by experience, skill, education, or experience has employed a reliable methodology upon sufficient facts to reach a reliable conclusion. In doing so, the Court need not consider all of the factors discussed in *Daubert* and its progeny or those contained in the Advisory Committee Notes to *Federal Rule of Evidence 702*. Even if all factors are considered, they need not all weigh in favor of reliability. **Furthermore, the Court need not even agree with the proffered expert's opinion.** Rather, the Court must determine if the opinions are reliable.

*Cooper Tire & Rubber Co. v. John Booth Farese*, Case No. 3:02CV210-SA-JAD, 2008 U.S. Dist. LEXIS 99658 at *4 (N.D. Miss. Dec. 9, 2008) (citations omitted, emphasis added).

Furthermore, Rule 704 also provides that "testimony in the form of an opinion or inference otherwise admissible is not objectionable because it embraces an ultimate issue to be decided by the trier of fact." FED. R. EVID. 704. It is generally thought that ultimate issues under Rule 704 must be factual, and not legal. *Richman v. Sheahan*, 415 F. Supp. 2d 929, 944 & 945 n. 15 (N.D. Ill. 2006). Expert testimony that purports to **explain the legal meaning of a term** is forbidden, but testimony **defining a term of art** as it is used within a given field may be

6

allowed. In addition, testimony that **a specific item or event fits within the meaning of a statutory term** may be admissible under Federal Rule of Evidence 702 even if it embraces an "ultimate issue." *Ways v. City of Lincoln*, 206 F. Supp. 2d 978, 991 (D. Neb. 2002) (emphasis in original).

The Court's gatekeeper role is no substitute for cross examination in the context of our adversary system. In *SEC v. Roszak,* the court dealt directly with the interplay between the role of the court as gatekeeper and the traditional techniques of cross examination and alternative witnesses to attack expert testimony:

> The primary purpose of Rule 702 is to avoid confusing and unreliable expert testimony. Nevertheless, "the rejection of expert testimony is the exception rather than the rule, and the trial court's role as gatekeeper is not intended to serve as a replacement for the adversary system." Cross examination and the presentation of contrary evidence are the "traditional and appropriate means" of attacking expert testimony.

*SEC v. Roszak,* 495 F. Supp. 2d 875, 880 (N.D. Ill. 2007) (citations omitted).

Furthermore, there is no requirement that this be an all or nothing decision. Courts have limited the scope of expert testimony or have asked for supplementation of the expert's report to give the adverse party more information.[4] Neither the SEC nor the Court have heard the precise language Professor Branson will use to explain his conclusions to the jury. The fact that his written disclosures tersely state his conclusions do not mean they overstep the bounds when properly presented oral testimony. Powers does not intend to offer the report of Professor Branson. He intends to offer Professor Branson, live before this court and the jury. Indeed, the

---

[4] *See* discussion of United States Magistrate Judge Morton Denlow regarding expert testimony of Professor M. Todd Henderson (Professor of Law at University of Chicago) on the subject of fiduciary duty in *CDX Liquidating Trust by the CDX Liquidating Trustee v. Venrock Associates,* 411 B.R. 571 (N.D. Ill. 2009) (a copy of this opinion is attached as Exhibit A). *See also Richard A. Lippe v. Bairnco Corp.*, Case No. 96 Civ. 7600 (DC), 2002 U.S. Dist. LEXIS 109, *3-4 (Jan. 7, 2002) (permitting an expert to testify but barring his testimony as to legal conclusions and credibility of witnesses).

7

SEC is free to depose Professor Branson and move to strike his conclusions based on actual testimony, not disclosures made in a Rule 26 report.

## II.  Professor Branson Is Eminently Qualified to Give Expert Testimony.

Professor Branson was consulted to offer expert testimony on three broad subjects:

1. The role of an escrow agent and how the duties and responsibilities of an escrow agent differ from those of a broker.

2. The private placement process, the documents that comprise the "total mix" of disclosures made by issuers to potential purchasers, the types of information typically incorporated into a stock purchase agreement, and the information made available to purchasers through public filings by issuers.

3. Whether Powers' actions conform to industry standards of conduct in a private placement and, as such, fail to rise to a level of recklessness or substantial assistance.

Professor Branson's Report clearly establishes that he is qualified and his opinions are reliable based on his experience, and he will testify about matters of fact that might be ultimate issues in the final deliberations of the jury and are permissible testimony. Professor Branson has academic, industry and private practice experience. He is well published in the area of corporate and securities law and teaches on the subject at the University of Pittsburgh Law School. (Branson Rep. ¶¶ 8-9.) He consults with the industry and has lectured to the industry and legal community on securities regulation. (*Id*. ¶ 10.) He was an active member of the Washington State Bar Association Securities Law Committee (*Id*. ¶ 12.) He has been a FINRA arbitrator in approximately 30 broker/dealer related disputes, chairing sixty percent of the panels on which he has served.

While counsel for the SEC belittles Professor Branson's opinions, it offers no argument that he is not qualified to offer expert testimony. The SEC's snippet quote from a single case where Branson was not permitted to testify (out of the dozens of cases where he did give

deposition or trial testimony) is neither instructive nor relevant to this court's deliberations since that court merely stated that his opinions did not support the elements of proof of the plaintiff's securities law claims.

### III. Branson's Testimony Provides Proper and Relevant Factual Information, Rather Than Legal Arguments.

The SEC claims that Branson's testimony provides improper legal arguments regarding issues of the law. Branson's testimony does no such thing. Rather, Branson provides factual information regarding the difference between a broker and an escrow agent as well as the standards of conduct used throughout the securities profession in order to help the trier of fact determine whether Powers' conduct arose to such a level as to constitute recklessness. In this regard his testimony will be similar to that offered by Professor Henderson on the fiduciary duty of directors in *CDX Liquidating Trust v. Venrock Assocs.*, 411 B.R. 571 (N.D. Ill. 2009) (discussed in footnote 4, *supra*).

In *Richman v. Sheahan,* the court found "there is no doubt that under Rules 702 and 704, an expert may testify about applicable professional standards and the defendants' performance in light of those standards." *Richman*, 415 F. Supp. 2d at 945; *see also Amakua Dev. LLC v. Warner*, Case No. 05 C 3082, 2007 U.S. Dist. LEXIS 49952, *34-35 (N.D. Ill. July 10, 2007). [5] These are precisely the types of questions upon which Professor Branson opines. "Testimony concerning the ordinary practices of those engaged in the securities business is admissible under the same theory as testimony concerning the ordinary practices of physicians or concerning other trade customs: to enable the jury to evaluate the conduct of the parties against the standards of ordinary practice in the industry." *Amakua Dev. LLC*, 2007 U.S. Dist. LEXIS 49952, *33, *citing Marx & Co. v. Diners' Club, Inc.,* 550 F.2d 505, 512 (2d Cir. 1977)

---

[5] The SEC relies upon *Amakua Dev.* throughout its brief. Pltf.'s Mem. at 4 n.-19, 5 n.24, 6 n.26.

Calling an opinion or conclusion a legal opinion does not make it so. District Judge Steven Merryday was faced with a similar *Daubert* motion in the case of *SEC v. Sky Way Global, LLC*, Case No. 8:09-cv-455, 2010 U.S. Dist. LEXIS 128359 (M.D. Fla. Dec. 6, 2010). Kenneth Kramer was charged with failing to register as a broker under Section 15(a) of the Exchange Act. Kramer contended he was a "finder" and not required to register even though he received hundreds of thousands of dollars in compensation with respect to stock transactions in Sky Global. Kramer retained an expert witness, Leonard H. Bloom, a practicing attorney and former employee of the SEC. Mr. Bloom's expert opinion is attached as Exhibit B and the Court's opinion regarding Mr. Bloom's qualifications is attached as Exhibit C.

The SEC moved to strike Mr. Bloom's opinion on the grounds that: (1) Bloom's opinion contained inadmissible legal conclusions; (2) Bloom failed to either articulate or apply a methodology; (3) Bloom's opinion ignored relevant evidence; and (4) Bloom lacked the "requisite training, experience, or education to qualify as an expert in the area of broker-dealer conduct." *Sky Way Global,* 2010 U.S. Dist. LEXIS 128359, *4. The arguments asserted by the SEC in that case are very similar to the arguments the SEC advances against Professor Branson in this case. In *Sky Way Global,* Judge Merryday had no problem dismissing the SEC's arguments, noting that:

> Based on the defendant's conduct, the expert offered several legal conclusions. Affirming the district court's decision to admit the expert's opinion, *Berckeley* (*Berckeley Inv. Grp., Ltd. v. Colkitt*, 455 F.3d 195 (3rd Cir. 2006)) explains that "the line between admissible and inadmissible expert testimony as to the customs and practices of a particular industry often becomes blurred when the testimony concerns a party's compliance with customs and practices that implicated legal duties." *Berckeley* finds that, to the extent that the expert offered an opinion on the customs and practices in the securities industry at the time, the opinion could aid the trier of fact in determining whether the defendant possessed the requisite scienter.

Case: 1:09-cv-00676 Document #: 321 Filed: 06/06/11 Page 11 of 14 PageID #:3341

*Sky Way Global*, 2010 U.S. Dist. LEXIS 128359 at *3.

Quoting from Weinstein's Federal Evidence Manual §13.04, the court stated for example, that "an expert's testimony that a company's financial filings were 'reasonable,' although arguably stating a legal conclusion, was not worded in the statutory language and would have been useful to a jury trying to resolve complex questions under the securities laws." *Id*., 2010 U.S. Dist. LEXIS 128359 at *11.

Judge Merryday's analysis is both accurate and instructive in the instant case. The conclusions of Mr. Bloom are no more legal opinions than the conclusions of Professor Branson and will be equally instructive to the jury. The SEC has failed to depose Professor Branson. The SEC did depose Mr. Bloom before filing their *Daubert* motion. So, Judge Merryday not only had his written report but the oral statements of Mr. Bloom to evaluate in making his decision to deny the SEC's motion.

**IV.    Professor Branson's Opinions are Based on the Record, are Reliable and Will Assist the Jury in an Admittedly Technical Area Filled with Legal Jargon, Custom and Practice.**

The SEC claims that Branson provides improper testimony about the securities industry but his opinions are clearly based on the record, reliable and will assist the trier of fact in analyzing the legal issues involved—namely, whether Powers was an escrow agent or a broker; and whether his conduct in light of industry custom and practice amounted to recklessness—the standard that the SEC is required to show in order to prove its case. The questions posed for Professor Branson dealt with Powers' conduct, not the conduct of other defendants and, as such, Branson reviewed all relevant documents, including Powers' deposition transcript; the exhibits proffered by the SEC in that deposition; the pleadings; the briefs and opinion on Powers' Motion to Dismiss; and data on disclosures made by the issuers for which HTD acted as escrow agent.

11

The SEC argues that Professor Branson's opinions mischaracterize the evidence but fails to point to any evidence that has been mischaracterized. The SEC simply does not wish to acknowledge that there are facts and arguments which can lead to a conclusion that differs from their theory of the case. Escrow agents and brokers are different. The courts point to a number of factors which can be indicative of the necessity that an offering participant register under Section 15 of the Exchange Act.[6] The list is not exhaustive or exclusive. Assuming this court does not grant summary judgment to either party on this subject, the jury will be required to weigh those factors in determining if registration is required. Professor Branson can assist the jury by explaining what the factors mean in the context of this case. Professor Branson can guide the jury by pointing those differences out without usurping the role of the judge or the jury.

Furthermore, the Court will instruct the jury on the meaning of recklessness for purpose of determining what constitutes aiding and abetting and Professor Branson can provide a context for Powers' conduct as measured against industry expectations and standards for people in his circumstances dealing with private placements. That the SEC has chosen not to offer the jury any guidance on any portion of their burden of proof does not mean Professor Branson cannot. As discussed above, an expert is permitted to discuss facts and weigh them against standards of conduct to give the jurors a balanced view of an alternative conclusion.

---

[6] *See SEC v. Corporate Relations Group*, Case No. 99-CV-1222, 2003 U.S. Dist. LEXIS 24925 at *56-57 (M.D. Fla. 2003), which identified many of the relevant factors. *See also In re Kemprowski & the Cambridge Consulting Co.*, 1994 WL 684628, at *2 (Dec. 8, 1994)) ("In determining whether a person has acted as a "broker," several factors are considered. These factors include "whether the person: 1) actively solicited investors; 2) advised investors as to the merits of an investment; 3) acted with a 'certain regularity of participation in securities transactions'; and 4) received commissions or transaction-based remuneration."). Additional factors include whether the person "is an employee of the issuer; . . . is selling, or previously sold, the securities of other issuers; . . . [and] is involved in negotiations between the issuer and the investor." *SEC v. Hansen*, No. 83 Civ. 3692, 1984 U.S. Dist. LEXIS 17835, *26 (S.D.N.Y. Apr. 6, 1984).

## CONCLUSION

The SEC has done nothing but make bald statements of the obvious (*e.g.,* that this court has a gatekeeper role and that legal conclusions are beyond the province of an expert) without offering any credible arguments why the opinions and conclusions of Professor Branson are inadmissible. Moreover, the SEC has failed to provide anything other than lip service to the claim of irrelevance or unreliability. Frankly, counsel's arguments are less legal assertions regarding admissibility and more areas for exploration on cross examination at trial or in a deposition. The reference to Judge Teilborg's decision in *In Re Apollo Group Inc. Securities Litig.,* 2:04-cv-02147, Docket No. 382 (D. Ariz. Nov. 9. 2007) (cited in Pltf's Mem. at 8) is so completely out of context that it makes little sense.

Powers has denied the allegations of the Amended Complaint and pled a number of affirmative defenses. Yet, the SEC makes no attempt to connect Professor Branson's testimony to any elements of the case and as discussed above, Professor Branson's testimony can provide the jury with context and an explanation of standards within the securities industry with respect to private placements. The SEC has failed to propose a single expert witness to support its case despite the fact that the SEC bears the burden of proof. As such, they are merely relying on supercilious insults to discredit an otherwise eminently qualified expert who has proffered highly reliable and relevant expert testimony. To borrow from counsel's brief, this entire argument is not copacetic. For the foregoing reasons the SEC's Motion to Strike Expert Testimony of Douglas Branson should be denied in its entirety.

Dated: June 6, 2011            Respectfully submitted,

                                           /s/ Philip T. Powers
                                           Philip T. Powers, Pro Se

Philip T. Powers
657 W. Wellington
Chicago, IL  60657
312-498-0771