**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| **UNITED STATES SECURITIES AND EXCHANGE COMMISSION,** | ) ) ) | |
| **Plaintiff,** | ) ) | No. 09 C 676 |
| v. | ) ) | **Magistrate Judge Cole** |
| **STEFAN H. BENGER, et al.,** | ) ) | |
| **Defendants.** | ) | |

**MEMORANDUM OPINION AND ORDER**

Defendants Jason Meyers, International Capital Financial Resources, Stephen von Haase, and CTA Worldwide filed a motion in which they asked to join in, incorporate, and adopt the motion and arguments of Stefan Benger and SHB Capital, Inc. to dismiss Counts I to III of the Securities and Exchange Commission's complaint charging them with violations of Section 10(b) of the Exchange Act and Rule 10b-5. In turn, Benger and SHB argued that Count III fails to state a claim against them for the same reasons as argued in the motion of Philip T. Powers, Global Financial Management, LLC, and Frank I. Reinschreiber (Dkt. #342). As the parties all adopt the arguments made in the briefing on that motion, Count III is dismissed in part as stated in the ruling on that motion.[1] That leaves Counts I and II, in which the Securities and Exchange Commission ("SEC") alleges that the defendants violated Section 17(a) of the Exchange Act. *See generally S.E.C. v. Benger*, 2013 WL 593952 (N.D.Ill. 2013).

The section of Benger and SHB's motion directed at those counts also refers, in part, to arguments made by other parties in other motions filed in this case. And so, essentially, the movants

---

[1] The ruling allowed the 10b-5(b) claim to stand, but dismissed the 10b-5(a) and (c) claims.

herein are often referring to memoranda which in turn refer partially to other memoranda. It's all a bit confusing.[2]

The briefing schedule on the motion from Benger and SHB was set to conclude with their reply on January 7, 2013. Those defendants settled their portion of the case, however, and so no reply was necessary. The movants herein – Meyers, International Capital, von Haase, and CTA, have not filed their own reply and have not indicated they have any desire to do so.

**1.**

***Janus* Does Not Apply To The Section 17(a) Claims In Counts I and II**

The defendants contend that the Supreme Court's ruling in *Janus Capital Group, Inc. v. First Derivative Traders*, _ U.S. _, 131 S.Ct. 2296 (2011) dictates that Counts I and II be dismissed for failure to state a claim. *Janus* was a Rule 10b-5 case in which the Supreme Court set the boundaries on who could be regarded as a "maker" of a statement and liable under the Rule. Rule 10b-5 makes it "unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce, or of the mails or of any facility of any national securities exchange, ... [t]o make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading . . . ." 17 CFR § 240.10b–5(b). Thus, what it means to "make" a statement is integral to determining liability under the Rule.

After a thorough analysis of the definition of the word, "make," the Court concluded that "[*f*]*or purposes of Rule 10b–5, the maker of a statement is the person or entity with ultimate authority over the statement, including its content and whether and how to communicate it.*" *Janus*,

---

[2] In fact, its more complicated than the scheme charged by the SEC.

\_ U.S. at \_, 131 S.Ct. at 2301 (emphasis supplied). In light of the Court's focus on the narrow definition of "make" as employed in Rule 10b-5, the vast majority of courts dealing with the question of whether *Janus* also applies to claims under Section 17 have answered that question with a resounding "no." Section 17, goes beyond "making" statements and prohibits an individual from *"employ[ing]* any device, scheme, or artifice to defraud," *"obtain[ing]* money or property by means of any untrue statement of material fact," and *"engag[ing]* in any [fraudulent] transaction, practice, or course of business." 15 U.S.C. §§ 77q(a)(1)-(3) (emphasis added). From a common sense standpoint, then, a complaint need not make the same types of allegations to state a 17(a) claim as the Supreme Court decided were necessary to state a 10b-5 claim.

A recent decision that addresses this question is *S.E.C. v. Sentinel Management Group, Inc.*, 2012 WL 1079961 (N.D.Ill. 2012). There, Judge Kocoras rejected the application of *Janus* to 17(a) claims with an elegant simplicity:

> the Supreme Court largely based its holding on the definition of the word "make," which is present in Rule 10b–5 but not so in Section 17(a). *Janus,* 131 S.Ct. at 2302–04. Whereas Rule 10b–5 prohibits an individual from "making" any untrue statement of material fact, Section 17(a) prohibits an individual from *"employ[ing]* any device, scheme, or artifice to defraud," *"obtain[ing]* money or property by means of any untrue statement of material fact," and *"engag[ing]* in any [fraudulent] transaction, practice, or course of business." 15 U.S.C. §§ 77q(a)(1)-(3) (emphasis added). The *Janus* decision was largely based on the Supreme Court's interpretation of the word "make," which is notably absent from Section 17(a).

2012 WL 1079961, 14 -15 (N.D.Ill. 2012)(Emphasis in original).

Additionally, Judge Kocoras made reference to the policy concerns about the expansion of private causes of action that troubled the *Janus* court. 2012 WL 1079961, 15. As discussed in the ruling on the Joint Motion of Defendants Powers, Global Financial Mgmt, and Frank Reinschreiber to Dismiss Count IV of the Second Amended Complaint, the Court in *Janus* made the point that

3

neither Rule 10b-5 nor §10(b) expressly creates a private right of action, and cautioned that "[c]oncerns with the judicial creation of a private cause of action caution against its expansion." 131 S.Ct. at 2302 (citations omitted). Because Section 17(a) does not create a private right of action, the policy concerns underlying *Janus* are not implicated by claims brought by the SEC under that Section. *Sentinel*, 2012 WL 1079961, 15.

These are two convincing reasons to follow Judge Kocoras and conclude that *Janus* does not apply to Counts I and II. A third is that Judge Kocoras is far from being alone in his interpretation. The vast majority of cases that have addressed this question have come to the same conclusion. *See, e.g., S.E.C. v. Sells*, 2012 WL 3242551, 7 (N.D.Cal. 2012); *S.E.C. v. Stoker*, 2012 WL 2017736, 8 (S.D.N.Y. 2012); *SEC v. Geswein,* No. 10–cv–1235, 2011 WL 4565861, at *2 (N.D.Ohio Sept. 29, 2011). The defendants rely on the lone case that goes the other way, *S.E.C. v. Kelly*, 817 F.Supp.2d 340 (S.D.N.Y. 2011), while ignoring the many decisions that have gone against its position even though that approach to dealing with contrary authority is unavailing. *See Bonds v. Coca-Cola* Co., 806 F.2d 1324, 1328 (7th Cir. 1986).

*Kelly* is clearly an outlier, even in its own district. It ignored the policy considerations that were important to the Court in *Janus*, and it has not been followed. *See Sentinel*, 2012 WL 1079961, 15; *Sells*, 2012 WL 3242551, 7; *Stoker*, 2012 WL 2017736, 8. And I shall not do so here. The defendants' Motion to Dismiss Counts I and II under *Janus* is denied.

**2.**
**The SEC Points To No Allegations In Its Complaint That Demonstrate That Counts I And II Should Not Be Dismissed Under *Morrison***

The defendants next argue that Counts I and II must be dismissed under the Supreme Court's ruling in *Morrison v. National Australia Bank Ltd.*, _ U.S._, 130 S.Ct. 2869 (2010). In *Morrison*,

4

the Supreme Court held that Section 10(b) of the Exchange Act does not have an extraterritorial reach. The statute covers "only transactions in securities listed on domestic exchanges, and domestic transactions in other securities, to which § 10(b) applies." _ U.S. at _, 130 S.Ct. at 2884. The implications of that holding for this case are discussed at length in the opinion granting the motion of certain defendants for partial summary judgment. *S.E.C. v. Benger*, 2013 WL 593952 (N.D.Ill. 2013). Here, the movants – again, adopting other parties' positions – argue that there are no allegations in the SEC's Second Amended Complaint that they, as opposed to any sales agents, offered any security in the United States.

Rather than address this argument head on, the SEC refers the court to its brief in response to the motion of certain defendants for summary judgment. The question there was not whether there were any *allegations* against the movants that passed muster under *Morrison*, but whether the *evidence* showed that the IBI sales, in general, were domestic transactions. The SEC's brief points to no allegations in its complaint regarding the movants. It relies entirely on Local Rule 56.1 submissions and accompanying evidence filed and relied upon in connection with the summary judgment motion. Perhaps the SEC means to convert the movant's 12(b)(6) motion to one for summary judgment as well, *R.J. Corman Derailment Servs., LLC v. Int'l Union of Operating Eng'rs, Local Union 150, AFL–CIO,* 335 F.3d 643, 647 (7th Cir. 2003), but that is not clear from their brief, in part due to the parties' references within references to other briefs and motions. No matter, because, the legal arguments they advanced in response to the motion of certain defendants for summary judgment – and which they rely on here – failed. Accordingly, the claims in Counts I and II against the movants are dismissed.

**3.**
**The Boiler Room Allegations Need Not Be Stricken**

Finally, the defendants ask that all allegations regarding the boiler room activities of the foreign sales agents be dismissed or stricken. This is an odd request because the sales made by the foreign sales agents are an essential component of the case. Without them, there would be no case. The defendants seem to be interpreting the claims against them as alleging that they controlled the agents under 15 U.S.C. §78c(a)(18), but the SEC explains that the allegations are there for no other reason than to establish *scienter* and the defendants' participation in the overall scheme. At rial, the evidence would be relevant under Rule 401, Federal Rules of Evidence and would not be offered to show propensity in violation of Rule 404(b).[3]

**CONCLUSION**

The plaintiffs' motion to dismiss [# 351] is GRANTED in part and DENIED in part.

ENTERED: _____
UNITED STATES MAGISTRATE JUDGE

DATE: 3/21/13

---

[3] Even under Rule 404(b) evidence of other acts by any person can be admissible to show the background of the charges. *United States v. Hills,* 488 Fed.Appx. 569, 573 (3rd Cir. 2012).