**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| UNITED STATES SECURITIES AND EXCHANGE COMMISSION, | ) ) ) | |
| Plaintiff, | ) ) | No. 09 C 676 |
| v. | ) ) | Magistrate Judge Cole |
| STEFAN H. BENGER, et al., | ) ) ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

The Securities Exchange Commission ("SEC") claims that the defendants engaged in an international boiler room scheme targeting some 1400 foreign investors. The scheme took in approximately $44 million primarily through the sale of U.S. penny stock. It is alleged that of the proceeds, the defendants skimmed 60% for themselves and the foreign boiler room operators who answered to them as commissions. The penny stock companies – the companies the investors were investing in – realized less than 40% of the proceeds. The SEC says that the investors never saw the distribution or escrow agreements that broke down the distribution percentages. They did see the stock purchase agreements but, in those documents, the defendants claimed there were no commissions and that only 1% of an investment didn't go to the companies – it went to a nominal transaction fee. The foreign boiler room operators allegedly used high pressure sales tactics, false identities, and fraudulent misrepresentations to make sales while the defendants distanced themselves, concealing the extent of their involvement and claiming ignorance of the sales process. *See generally S.E.C. v. Benger*, 2013 WL 593952 (N.D.Ill. 2013).

In Count IV of the Second Amended Complaint, the SEC charges the movant – Philip T. Powers – and Global Financial Management, LLC ("GFM") and Frank I. Reinschreiber with aiding and abetting in violation of 10(b) of the Exchange Act, 15 U.S.C. 78j(b), and Rule 10b-5, 17 C.F.R. § 240.10b-5, promulgated thereunder. Mr. Powers asks that Count IV be dismissed pursuant to FedR.Civ.P. 9(b). The Rule requires that "a party must state with particularity the circumstances constituting fraud . . . ." *See Tricontinental Industries, Ltd. v. PricewaterhouseCoopers, LLP*, 475 F.3d 824, 833 (7th Cir. 2007). Mr. Powers contends that the SEC has fallen short of that mark by impermissibly lumping him in with Mr. Reinschreiber and GFM, and alleging nothing more than that he was a principal of GFM, controlled GFM, and served as an escrow agent. (Dkt. #350, *Memorandum in Support of Powers' Motion to Dismiss*, at 3). There are no allegations, according to Mr. Powers, that says what he did to provide substantial assistance to the scheme as part of GFM. (Dkt. #350, *Memorandum in Support of Powers' Motion to Dismiss*, at 3-4). Mr. Powers also contends that discovery has shown that he "did not receive a penny of compensation from [GFM], never signed a check, never initiated a wire transfer, never sent a letter, did not maintain an office at [GFM], never communicated with any issuers or purchasers as a representative of [GFM] and exercised no control over the day to day operations of [GFM]." (Dkt. #350, *Memorandum in Support of Powers' Motion to Dismiss*, at 4).

Mr. Powers' motion is somewhat curious. First of all, it's his second try at dismissing the aiding and abetting allegations against him. On his first go-round, Judge Lefkow determined that the SEC alleged that Mr. Powers:

> played an integral part in the completion of the sale to the investor by, *inter alia*, taking custody of and distributing the investors' funds according to the terms of the escrow agreements, which were corollaries to the distribution agreements; receiving

>and processing the signed SPAs, which failed to disclose the exorbitant commissions; communicating the receipt of those SPAs to the issuers; and sending the investors their share certificates, which, as far as the investors' knew, meant that their total consideration have been transmitted to the issuer. Thus, Powers' actions were, as the SEC contends, essential to the completion of the sales at issue.

*SEC v. Benger,* 697 F.Supp.2d 932, 942-43 (N.D.Ill. 2010). It's unclear what has changed in the interim. The SEC's allegations certainly didn't erode into inadequacy over the intervening months.

More importantly, contrary to Mr. Powers' present criticisms, the SEC's complaint goes beyond stating that he was a principal at GFM and an escrow agent. It alleges that Mr. Powers and Mr. Reinschreiber controlled GFM, and that they, and their company, acted as escrow agents for several of the issuers of stock sold through the boiler room scheme. (2AC, ¶¶ 14, 22, 49). Mr. Powers was one of the defendants who drafted the template contract documents, including escrow, distribution, and share purchase agreements. All the defendants then approved, adopted, and implemented the documents. (2AC, ¶ 20).

Once investors transferred their funds to the escrow agents in Illinois, (including Mr. Powers), the escrow agents disbursed the funds in accordance with the escrow and distribution agreements. (2AC, ¶¶ 28, 49). They wired commission payments to accounts in countries like Switzerland and Cypress – nations known to have strong banking secrecy laws. The escrow agents, including Mr. Powers, then finalized the transactions by causing share certificates to issue to the investors. Letters accompanying the certificates sent from Illinois to the foreign investors noted the number of shares purchased, but never the commissions paid, and misleadingly (it is alleged) told the investors they had received "Total Consideration." The movants reaped at least $6.9 million in investor funds for their efforts. (2AC, ¶¶ 31, 50). According to the Second Amended Complaint, there was an air of legitimacy lent to the scheme by the fact that GFM was a U.S.-based company,

3

and Mr. Powers had a law firm. (2AC, ¶ 22). That, at least, is the import of the stock purchase agreement. While the escrow agents, therefore, could not maintain their anonymity, they did conceal the existence of the other defendants and the sales agents, and claimed that they were uninvolved in the scheme beyond the collection of the investors' money. (2AC, ¶ 32). But the SEC claims they knew full well what was going on. Notably, at one point in the scheme, it is alleged that Mr. Powers expressed concern over being put in a position to "know" who the brokers were and be liable for their sales practice abuses. (2AC, ¶ 34). The SEC claims that the efforts of Mr. Powers, Mr. Reinschreiber, and GFM provided knowing and substantial assistance to the other defendants' boiler room scheme. (2AC. ¶ 89).

What more Mr. Powers wants from the SEC in the way of allegations is difficult to say; his memorandum in support of his motion to dismiss is rather terse. It left the SEC somewhat confused as how to respond (Dkt. #364, *Plaintiff SEC's Response*, 2-5) since the brief does not get very specific, and his arguments do not get developed until his reply brief. But, of course, that is too late. *See Bodenstab v. County of Cook,* 569 F.3d 651, 658 (7th Cir.2009) (party waived arguments that were not developed until the reply brief); *Harper v. Vigilant Ins. Co.*, 433 F.3d 521, 528 (7th Cir. 2005)("The argument is more developed in Harper's reply brief, but this is too little, too late . . . .").

As for his list of things that have come to light in discovery, that has no bearing on a Motion to Dismiss. The question is not whether the SEC will prevail when it presents its evidence, but whether its allegations, *taken as true*, state a claim against Mr. Powers. *Skinner v. Switzer*, 131 S.Ct. 1289, 1296 (2011); *McCauley v. City of Chicago*, 671 F.3d 611, 616 (7th Cir. 2011). Because the allegations against Mr. Powers "plausibly suggest an entitlement to relief," *Ashcroft v. Iqbal*, 556 U.S. 662, 681 (2009), and because Rule 9(b)'s strictures have been satisfied, Mr. Powers' motion

4

4

to dismiss is not persuasive.

## CONCLUSION

The defendant's motion to dismiss [# 349] is DENIED.

ENTERED: _____
UNITED STATES MAGISTRATE JUDGE

DATE: 3/21/13