IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES SECURITIES AND EXCHANGE COMMISSION, | ) ) ) | |
| Plaintiff, | ) ) | No. 09 C 676 |
| v. | ) ) | Magistrate Judge Cole |
| STEFAN H. BENGER, et al., | ) ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

In an earlier Opinion, the motion of certain defendants for partial summary judgment was granted. *S.E.C. v. Benger*, 2013 WL 593952 (N.D.Ill. 2013). This opinion will deal with Count V, which charges certain defendants with having acted as brokers or dealers in connection with the foreign sales of IBI stock, *Benger*, *supra*, without having been registered with the SEC pursuant to Section 15(a)(1) of the Securities and Exchange Act of 1934. 15 U.S.C. §78o(a)(1).[1] It is the defendants' contention that since their activities did not involve domestic sales of stock, they were not required to register under Section 15(a) of the Act. The argument is based on *Morrison v. National Australia Bank Ltd., _U.S._,* 130 S.Ct. 2869 (2010), which held that §10(b) of the Securities Exchange Act of 1934 and SEC Rule 10b-5 were not intended to have extraterritorial effect to provide a cause of action in federal courts for fraudulent conduct in connection with the

---

[1] Judge Lefkow had concluded that the defendants were acting as brokers or dealers and that conclusion is not challenged. *SEC v. Benger*, 697 F.Supp.2d 932, 943 (N.D.Ill. 2010). That holding is also the law of the case. *Minch v. City of Chicago,* 486 F.3d 294, 301 (7th Cir.2007)(the doctrine applies even when, as here, a case is reassigned from one judge to another).

sale of foreign securities on foreign exchanges, even if part of the fraudulent activities occurred in the United States.[2]

The holding was based on the "'longstanding principle of American law'" that, "unless a contrary intent appears, legislation of Congress is meant to apply only within the territorial jurisdiction of the United States.":

> This principle...rests on the perception that Congress ordinarily legislates with respect to domestic, not foreign matters. Thus, 'unless there is the affirmative intention of the Congress clearly expressed' to give a statute extraterritorial effect, 'we must presume it is primarily concerned with domestic conditions.' The canon or presumption applies regardless of whether there is a risk of conflict between the American statute and a foreign law. Since Section 10(b) contained no clear indication

---

[2] Section 10(b), makes it unlawful:

To use or employ, in connection with the purchase or sale of any security registered on a national securities exchange or any security not so registered, or any securities-based swap agreement [FN1] any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors. 15 U.S.C. § 78j(b),

Rule 10b–5, promulgated thereunder, makes it unlawful :

"for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce, or of the mails or of any facility of any national securities exchange,

"(a) To employ any device, scheme, or artifice to defraud,

"(b) To make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, or

"(c) To engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person, in connection with the purchase or sale of any security." 17 CFR § 240.10b–5.

of an extraterritorial application, it has none.[3]

130 S.Ct. at 2878 (citations omitted).

The Court held that the Exchange Act gave no indication that Congress intended it to have extraterritorial effect. Whether a transaction was subject to Section 10(b) depended on whether it was a domestic or foreign transaction since domestic securities transactions were the focus of Congress' regulatory objectives.[4] Here is how the Court put it:

> ...the focus of the Exchange Act is not upon the place where the deception originated, but upon purchases and sales of securities in the United States. Section 10(b) does not punish deceptive conduct, but only deceptive conduct "in connection with the purchase or sale of any security registered on a national securities exchange or any security not so registered." 15 U.S.C. § 78j(b). Those purchase-and-sale transactions are the objects of the statute's solicitude. It is those transactions that the statute seeks to "regulate"; it is parties or prospective parties to those transactions that the statute seeks to "protec[t],". And it is...only transactions in securities listed on domestic exchanges, and domestic transactions in other securities, to which § 10(b) applies.

*Morrison*, 130 S.Ct. at 2884 (citations omitted).

In the defendants' view, there is no evident intent by Congress in Section 15(a) to override the presumption of non-extraterritoriality of statutes. Since, the defendants argue, the regulatory purpose of Section 15(a) is "virtually the same" as that of Section 10(b), registration is only required where a broker or dealer is engaged in or induces others to engage in a domestic transaction. Not surprisingly, the SEC has a very different view. It contends that unlike Section 10b, Section 15 focuses on the "registration and regulation of brokers" and thus does not implicate *Morrison* and the principle of non-extraterritorial reach of statutes absent a clear intent by Congress. (SEC Brief

---

[3] This principle represents a canon of construction, or a presumption about a statute's meaning, rather than a limit upon Congress's power to legislate. The canon or presumption applies regardless of whether there is a risk of conflict between the American statute and a foreign law. *Morrison*, 130 S.Ct. at 2877 -2878.

[4] The conduct described in Count V involves foreign stock transactions. *See* Count V, ¶¶ 82, 85.

at 14).

For the SEC, it is inconsequential that a securities transaction is classified as foreign under *Morrison*. In its view, anyone who facilities any stock transaction through conduct in the United States must register with the SEC under Section 15(a) even if, as occurred in this case, the transaction is not domestic and does not occur on a national securities exchange. To support its oceanic reading of Section 15(a), the SEC argues that statutory titles have value in "divin[ing]" the meaning and purpose of a statute, and twice quotes the title of Section 15: **"Registration and Regulation of Brokers and Dealers."** (SEC Brief at 12-13)(Boldface in original). While that is a correct rendition of Section 15's title, it is significant that the SEC's brief ignores Section 15(a), the specific provision involved in this case. Section 15(a) is captioned: **"Registration of all persons utilizing exchange facilities to effect transactions; exemptions**." 15 U.S.C. § 78o(a)(1)(Boldface in original).

The Congress' focus on national exchanges in Section 15(a) is apparent from the text of the section, which provides:

> It shall be unlawful for any broker or dealer...(other than such a broker or dealer whose business is exclusively intrastate and who *does not make use of any facility of a national securities exchange*) to make use of the mails or any means or instrumentality of interstate commerce to effect any transactions in, or to induce or attempt to induce the purchase or sale of, any security other than an exempted security or commercial paper, bankers' acceptances, or commercial bills) unless such broker or dealer is registered in accordance with subsection (b) of this section.(parenthesis in original)(emphasis supplied).

It has long been held that while express provisions in the body of an act cannot be controlled or restrained by the title or preamble, the latter are relevant to the court's construction of the statute. *Appert v. Morgan Stanley Dean Witter, Inc.*, 673 F.3d 609, 619 (7th Cir. 2012). *See also United States v. Fisher*, 2 Cranch, 358, 386 (1805)(Marshall, C.J.); *Coosaw Mining Co. v. State of South*

4

*Carolina,* 144 U.S. 550, 563 (1892); *United States. v. Thompson,* 484 F.3d 877, 881 (7th Cir.2007) (Easterbrook, C.J.)(caption of a statute can properly be used "for guidance."); *S.E.C. v. Gruss,* 859 F.Supp.2d 653, 663 (S.D.N.Y. 2012). Thus, guided by this hoary principle and the SEC's insistence that titles of statutes are important, (*SEC brief* at 13), we look to the title of Section 15(a), which evidences Congress' concern with registration of those utilizing the facilities of national exchanges. The Section's focus on national exchanges and transactions on them is consistent with the primacy of the domestic exchanges under the Act's comprehensive statutory scheme.

"The primacy of the domestic exchange is suggested by the very prologue of the Exchange Act, which sets forth as its object" to provide for the regulation of security exchanges operating in interstate and foreign commerce. *Morrison*, 130 S.Ct. at 2884. Thus, §78b, which is titled "**Necessity For Regulation,**" states that transactions in securities "as commonly conducted upon securities exchanges and over the counter markets are affected with a national public interest which makes it necessary to provide for regulation and control of such transactions...and perfect the mechanisms of a national market system for securities..." 15 U.S.C. §78b. *See also Morrison*, 130 S.Ct at 2884-2885. The same focus on domestic transaction is evident in the Securities Act of 1933, which was enacted by the same Congress as the Exchange Act, and formed part of the same comprehensive regulation of securities trading. *Morrison*, 130 S.Ct. at 2885. There is nothing in §78b which remotely suggests that the Act was concerned with or intended to require registration to regulate brokers involved in foreign transactions on foreign exchanges.[5]

The SEC's basic argument is that the "primary purpose" of Section 15 is the registration

---

[5] *Morrison* pointed out that the SEC, itself, has concluded that the 1933 Act did not require a registration statement in connection with sales that occur outside the United States. 130 S.Ct. at 2885.

and regulation of brokers, not the underlying security transactions that may occur overseas. (SEC Brief at 13). Even if one ignores the title of Section 15(a) in contravention of the SEC's insistence that titles are of value in answering the interpretative question in this case, that is the beginning and not the end of what must be a more discerning analysis. The SEC's argument mistakenly overlooks the fact that the requirement of registration is not an end in itself, standing in splendid isolation. Rather, registration is merely a subordinate component of the Exchange Act's broader statutory scheme and exists to achieve the overarching purpose of the Act. *See Regional Properties, Inc. v. Financial and Real Estate Consulting Co.*, 678 F.2d 552, 561-62 (5th Cir. 1982)(Section 15(a)'s registration requirement is "of the utmost importance *in effecting the purposes of the Act*.")(emphasis supplied). *Accord, S.E.C. v. Kramer,* 778 F.Supp.2d 1320, 1334 (M.D.Fla.2011*); S.E.C. v. Benger*, 697 F.Supp.2d 932, 943-44 (N.D.Ill. 2010); *Celsion Corp. v. Stearns Management Corp*. 157 F.Supp.2d 942, 947 (N.D.Ill.2001); 15 U.S.C. §78o(b)(Commission is empowered to require such information and documents concerning the broker or dealer as "necessary or appropriate in the public interest or for the protection of investors." *See also* 15 U.S.C. §78o(b)(2)(A). And that purpose is to protect investors through regulation of transactions upon national securities exchanges and in over-the-counter markets against manipulation of share prices. *Morrison, supra*; *Ernst & Ernst v. Hochfelder,* 425 U.S. 185, 194 (1976); *Gruss,* 859 F.Supp.2d at 662 ; *Krame*r, 778 F.Supp.2d at 1334.[6]

---

[6] That registration is not an end in itself but the means to achieve the goal of protection of those involved in (domestic) securities transactions is further illustrated by Section 15(a)'s empowerment of the Commission to exempt from the registration requirement any broker or dealer so long as it is "consistent with the public interest and the protection of investors...." 15 U.S.C. §78o(a)(2).

It is that purpose against which Section 15(a) must be assessed, for purpose is a critical component of statutory construction, *Negusie v. Holder* , 555 U.S. 511, 522 (2009); *Gomez v. United States,* 490 U.S. 858, 864(1989), and can provide a clear limiting principle. *See Piper v. Chris-Craft Industries, Inc.,* 430 U.S. 1 (1977); *Haggar Co. v. Helvering*, 308 U.S. 389, 396 (1940); *O'Rourke v. Palisades Acquisition XVI, LLC*, 635 F.3d 938, 943 (7th Cir. 2011); *Edelson v. Ch'ien,* 405 F.3d 620, 628 (7th Cir.2005). Given the desideratum of the Exchange Act, it is difficult to perceive a valid regulatory interest in requiring registration of a broker or dealer who is not seeking to effect a securities transaction on a national exchange, but only a foreign purchase or sale under *Morrison.* Phrased differently, in light of *Morrison*, a broker's failure to register under Section 15(a) of the Act is not actionable in those cases where the ultimate and intended purchase and sale was foreign and thus, itself, outside the scope of the Act.

Each side cites a single case in support of its position, although neither was decided under the Exchange Act. The defendants rely on *Starshinova v. Batratchenko*, _F.Supp.2d_, 2013 WL 1104288 (S.D.N.Y. 2013), which concluded that the Commodity Exchange Act has no extraterritorial application, while the SEC relies on *SEC v. Gruss*, 859 F.Supp.2d 653 (S.D.N.Y. 2012), which was decided under the Investment Advisers Act of 1940, which makes it unlawful for an investment adviser to employ any scheme or artifice to defraud any client or prospective client or to engage in any transaction, practice, or course of business which operates as a fraud or deceit upon a client or prospective client. *See Gabelli v. S.E.C.*, _U.S._, 133 S.Ct. 1216, 1217 (2013).

In *Starshinova*, the district court, relying on *Morrison,* held that the Commodity Exchange Act does not apply abroad. As the court pointed out, there was nothing particularly novel about its holding, as Judge Lasker had come to the same conclusion twenty-eight years earlier. 2013 WL

1104288 at *6. A decision that the Commodity Exchange Act was not intended by the Congress to have extraterritorial effect is simply not helpful to deciding the reach of the registration provision of the Securities Exchange Act of 1934.

Nor is *Gruss* overly helpful in deciding that issue since it was not decided under the Investment Advisers Act. In *Gruss*, the SEC sought enforcement of the Investment Advisors' Act against the defendant for his deceptive acts directed against a client located in the Cayman Islands. In rejecting the defendant's argument that the SEC's enforcement action constituted an impermissible, extraterritorial application of the IAA, the district court emphasized what it perceived to be "[t]he distinct purposes behind the Exchange Act versus the IAA...." 859 F.Supp.2d at 662.[7] The purpose of the Exchange Act is to regulate and control "'transactions in securities commonly conducted upon securities exchanges and over-the-counter markets.'" *Id.* (quoting, Section 2, 48 Stat. 881 (1934)). The purpose of the IAA, the court held, "is to regulate and 'to prevent fraudulent practices by investment advisers.'" *Id.* Thus, the Exchange Act focuses "upon purchases and sales of securities in the United States[,] 'whereas the IAA focuses on the adviser.'" *Id.*

In arguing that the "exact same reasoning" in *Gruss* applies to Section 15 of the Exchange Act, the SEC has overlooked *Gruss*' emphasis on the "distinct purposes behind the Exchange Act versus the IAA...." *Id*. at 662. As *Gruss* noted, the Exchange Act focuses on purchases and sales of securities in the United States, whereas the IAA "focuses on the adviser." *Id.* Additionally, the SEC's "exact same reasoning" argument relies on the title of "Section 15" as indicative of its "primary purpose." (*SEC Brief* at 13-14). While quoting the title of Section 15 as "**Registration**

---

[7] If the court's assessment is right, the SEC's reliance on *Gruss* would seem to be misplaced. A statute having distinct objectives from the one under consideration by the court would seem to have little, if any, utility in the court's interpretive task interpreting assistance in interpreting the other act.

8

**and Regulation of Brokers and Dealers**." (*SEC Brief* at 13-14), the SEC ignores the title of the specific subsection involved in this case. Section 15(a) is entitled, "**Registration of all persons utilizing exchange facilities to effect transactions; exemptions**." According that title the significance to which it is entitled under the SEC's own arguments (*SEC Brief* at 13), leads to the conclusion that the "primary purpose" – to use the SEC's phrase – of Section 15(a)'s registration requirement was to regulate those brokers and dealers utilizing American exchange facilities.[8]

This reading of Section 15(a) is consistent with *Morrison's* holding the Exchange Act concerns itself not with foreign transactions but with the purchase or sale of any security registered on a national securities exchanges. As the Court lambently put it: "[t]hose purchase-and-sale transactions are the objects of the statute's solicitude. It is those transactions that the statute seeks to 'regulate'; it is parties or prospective parties to those transactions that the statute seeks to 'protec[t],' And it is...only transactions in securities listed on domestic exchanges, and domestic transactions in other securities, to which §10(b) applies." *Morrison*, 130 S.Ct. at 2884 (citations omitted).

Further, the SEC points to its 1989 regulation, which provides a partial exemption for certain foreign brokers and dealers. The regulation, 17 C.F.R.§240.15a-6, provides that all broker-dealers physically operating within the United States who effect, induce, or attempt to induce any securities transactions are required to register with the Commission. Since the defendants were "physically operating within the United States," they were, says the Commission, required to register. (*SEC Brief* at 15). But the regulation cannot of its own force control this case since it came years before

---

[8] Similarly, those engaging in purely intrastate transactions who do not make use of any facility of a national exchange need not register under Section 15(a). 15 U.S.C. §78o(a)(1).

9

*Morrison* was decided. To rely on the regulation is therefore to beg the very question to be decided.

In a footnote, the SEC contends that Section 30(b) of the Act "reinforces" the conclusion that since the defendants were conducting their affairs in the United States, they were required to register. Section 30(b) says that the "provisions of the [Exchange Act] or any rule or regulation thereunder shall not apply to any person insofar as he transacts a business in securities without the jurisdiction of the United States, unless he does so in violation of regulations promulgated by the SEC "to prevent ... evasion of [the Act]." (*SEC Brief* at 15, n.10). In *Morrison*, the Court concluded that Section 30(b) did not indicate Congress' intent that the Act have extraterritorial application. The provision, the Court said, "seems to us directed at actions abroad that might conceal a domestic violation, or might cause what would otherwise be a domestic violation to escape on a technicality." *Morrison,* 130 S.Ct. at 2883. Those considerations do not apply here.

The SEC's brief also argues that §30(a) authorization to the Commission to make rules and regulations covering transaction in securities of domestic issuers – here, the issuers were foreign companies – that are facilitated by a broker on a foreign exchange does not suggest a limitation on the Commission's authority to regulate brokers who conduct their business in the United States in connection with foreign securities on foreign exchanges. (*SEC Brief* at 15, n. 10). There are two difficulties with the argument. First, the argument is unsupported by any case and is unamplified beyond the SEC's conclusory statement. Skeletal arguments are waived. *Puffer v. Allstate Ins. Co.,* 675 F.3d 709, 718 (7th Cir. 2012).

Second, "[w]hen a statute limits a thing to be done in a particular mode, it includes the negative of any other mode." *Transamerica Mortgage v. Lewis,* 444 U.S. 11, 20 (1979); *National Railway Passenger Corp. v. Passengers Association,* 414 U.S. 453, 458 (1974). *See also Meghrig*

*v. KFC Western, Inc.,* 516 U.S. 479, 488 (1996). Or as Judge Posner has phrased it: "by permitting [certain conduct – here the regulation of a broker in the United States where the security on the foreign exchange is from a United States issuer – §30(a) of the Act] implies that what is not permitted is forbidden...." *United States v. Dorfman,* 690 F.2d 1230, 1232 (7th Cir.1982). This is effectively what the court said in *Morrison* in connection with subsection 30(a): "when a statute provides for some extraterritorial application, the presumption against extraterritoriality operates to limit that provision to its terms." 130 S.Ct. at 2883.

## CONCLUSION

For the SEC, the result in this case will be unappealing. If the SEC's Complaint is right, the defendants were involved in conduct that was dishonest and helped implement a scheme to defraud foreign investors. (It should be emphasized that all the defendants have denied any wrongdoing). But the same can be said of the defendants in *Morrison.* But, we now know that the reach of the Exchange Act is more limited than previously thought, and the constraints established in *Morrison* govern the outcome of the present motion to dismiss the failure-to-register count. While registration under Section 15(a) is, in its most basic aspect, a local event, where the failure to register occurs in connection with a foreign sale of a non-U.S. security, the considerations that underlay *Morrison* cannot be disregarded. Nor can the limited Congressional intent regarding the reach of the Act generally and Section 15(a), in particular, and the overarching regulatory scheme of the Act be ignored.

The Defendants' Motion to Dismiss Count V [#344] is Granted.

11

ENTERED: /s/ Jeffrey Cole
UNITED STATES MAGISTRATE JUDGE

DATE: 3/28/13