# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES SECURITIES AND EXCHANGE COMMISSION, | ) ) ) | |
| Plaintiff, | ) ) | No. 09 C 676 |
| v. | ) ) | Magistrate Judge Jeffrey Cole |
| STEFAN H. BENGER, et al., | ) ) ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

Stefan von Hase and CTA Worldwide, S.A., two defendants among several in this case, move for an order vacating the default that was entered against them October 23, 2013. [Dkt. #457].[1] The SEC has objected – and quite vigorously. [Dkt. #471]. Mr. von Hase – resident of the Bahamas and owner of CTA Worldwide – claims that from April through October 2013, he was being treated for alcoholism and could not attend to his obligations and those of his company to participate in this case. Interestingly, Mr. von Hase has not submitted his own declaration or affidavit to support the claim. Instead, he has submitted statements from three Bahamian doctors, two of whom assert that during the seven month period from April through October 2013, he was unable to "confer" with his counsel.

Aside from that, he paints a rather glowing picture of his participation in this lawsuit up to the time of his claimed period of incapacitation. To hear him tell it, he has dutifully responded to complaints, sat for depositions, and traveled to Chicago several times to meet with his attorney. But

---

[1] The other defendants have settled with the SEC.

the reality is quite different.

## Background

The SEC filed this suit on February 3, 2009, naming eight defendants and two relief defendants, Mr. von Hase and CTA ("default defendants"). (Dkt. #1). Default defendants moved to dismiss the complaint on the ground (among others) that the court lacked personal jurisdiction over them. (Dkt. #70). Judge Lefkow denied the motion, finding that "both [von Hase] and CTA continually conduct business in the United States and in doing so, have sought to benefit from its laws." *SEC v. Benger*, 2009 WL 1851186, at *8 (N.D. Ill. 2009).

Default defendants' answer to the Complaint was due on July 14, 2009, but they missed that deadline – by quite a bit. It was not until August 20th that they even sought an extension of time. The excuse was that Mr. von Hase was based in the Bahamas, and his counsel had a trial in Virginia during August. (Dkt. # 153). While this did not account for default defendants' inactivity during the entire month of July, Judge Lefkow nevertheless granted the motion and gave the default defendants until September 4, 2009, to file their answer. (Dkt. # 159). But the default defendants missed that deadline as well. They did not ask for another extension and, without asking for leave to file *instanter*, simply filed their answer well over a month late, on October 15, 2009. (Dkt. # 180).

On April 1, 2010, the SEC filed an amended complaint which, among other things, converted von Hase and CTA from relief defendants to full defendants. (Dkt. # 238). On April 8, 2010, Judge Lefkow ordered all defendants to respond to the amended complaint by May 6th. (Dkt. # 239). With the exception of the default defendants, all the defendants complied. Again, the default defendants did not seek extra time to file their answer. The SEC subsequently informed default defendants that it would move for a default judgment if they did not communicate their intent to file an answer by

May 19th. (Dkt. # 253, Ex. 1). Default defendants ignored the SEC's communication, and the SEC followed through with its motion. (Dkt. # 253).

And so, Judge Lefkow entered the first default judgment against the default defendants on June 22, 2010. (Dkt. # 261). The judge set a remedies prove-up hearing for August 17, 2010. (Dkt. # 258).[2] Judge Lefkow postponed that hearing until September 2, 2010, at which time default defendants asked for leave to file a motion to vacate the default judgment. (Dkt. # 264; 266). They filed their motion on September 9th (Dkt. #267), and the SEC agreed not to oppose it if the default defendants provided complete discovery responses, filed an answer to the complaint, and produced Mr. von Hase for a deposition. On November 16, 2010, the default defendants finally sought and were subsequently granted leave to file their answer to the amended complaint *instanter*. (Dkt. # 282; 284).

In the wake of the Supreme Court's ruling in *Janus Capital Group, Inc. v. First Derivative Traders*, 131 S.Ct. 2296, 2302 (2011) (holding that "[f]or purposes of Rule 10b-5, the maker of a statement is the person or entity with ultimate authority over the statement, including its content and whether and how to communicate it"), the SEC sought and was granted leave to file its current amended complaint on December 20, 2011. (Dkt. #332-334). Defendants filed various motions to dismiss and for summary judgment and, following extensive briefing and oral argument, the court issued a series of rulings in February and March 2013, granting the motions in part and denying them in part. (Dkt. # 405; 411-413; 415; 418-419). *See S.E.C. v. Benger*, 2013 WL 593952 (N.D.Ill.

---

[2] On the same day it filed its default motion, the SEC filed a motion to compel the production of documents from default defendants, based on their failure to make a complete production in response to the SEC's prior document requests. (Dkt. # 255). I denied the SEC's motion for failure to comply with Local Rule 37.2 (Dkt. # 257), and later, after Judge Lefkow's ruling, denied it as "moot in light of the default judgment just entered by Judge Lefkow." (Dkt. # 259).

2013); *S.E.C. v. Benger*, 931 F.Supp.2d 908 (N.D.Ill. 2013); *S.E.C. v. Benger*, 931 F.Supp.2d 904 (N.D.Ill. 2013); *S.E.C. v. Benger*, 931 F.Supp.2d 901 (N.D.Ill. 2013); *S.E.C. v. Benger*, 934 F.Supp.2d 1008 (N.D.Ill. 2013).

After the SEC elected to stand on the surviving claims in its complaint, certain defendants moved for an extension of time to answer. (Dkt. #425). The motion was granted, and the defendants were given until June 13, 2013, to answer the complaint. (Dkt. # 425; 427). Yet again, the default defendants failed to file their answer by the deadline or move for a further extension of time.

On August 26, 2013, Mr. von Hase's counsel filed a motion to withdraw as the default defendants' attorney, explaining that, since early in 2013, his clients had communicated with him less frequently. He had not heard from Mr. von Hase since April 13, 2013, despite sending him thirteen emails and leaving twelve voicemails. (Dkt. #435). He said he made several other efforts to contact Mr. von Hase, from asking his friends about him, to contacting the Bahamian police. Finally, counsel was directed to the honorary German consul who told him he knew Mr. von Hase and explained that he had been drinking heavily and had withdrawn from social contact. (Dkt. # 435). The default defendants' counsel attempted to FedEx a letter to Mr. von Hase, but the delivery service was unable to gain entrance to Mr. von Hase's residence. Conceding that the case must go forward, the default defendants' lawyer asked for leave to withdraw as counsel. (Dkt. # 435). The motion was granted and the default defendants were ordered to answer the complaint by October 7, 2013. (Dkt. # 442). They didn't, of course.

On October 23, 2013, the court granted the SEC's oral motion for entry of default against the default defendants. (Dkt. # 447). Coincidentally, Mr. von Hase's counsel had apparently re-established contact with Mr. von Hase and was allowed to re-enter the case. (Dkt. # 447). He

explained that Mr. von Hase had endured a "lengthy hospitalization" for alcoholism. (Dkt. # 471-1,10/23/2013 Hrg. Tr. at 3:21-25).[3]  Given the history of what had occurred with the default defendants, and since "[n]othing is simpler than to make an unsubstantiated allegation," *Parko v. Shell Oil,* 739 F.3d 1083, 1086 (7th Cir. 2014) – it is, in part, for that reason that uncorroborated statements in briefs and oral argument don't count,  *see Clifford v. Crop Production Services, Inc.*, 627 F.3d 268, 273 n.6 (7th Cir. 2010); *IFC Credit Corp. v. Aliano Brothers General Contractors, Inc.*, 437 F.3d 606, 610-611 (7th Cir.2006); *In re: Payne*, 431 F.3d 1055, 1060 (7th Cir.2005) – I told Mr. von Hase's counsel that I would need something more than Mr. von Hase's word given through his lawyer, who of course had no first hand information at all. Accordingly, I advised counsel that any motion to vacate the default must be supported by evidence in the form of hospital and doctors' records documenting his stay in the hospital and visits with his doctors. (# 471-1,10/23/2013 Hrg. Tr. at 9:6-11).  Counsel agreed.  (*Id.*).

In the wake of this hearing, the default defendants took absolutely no action to cure their default or answer the complaint, waiting over three months – until January 28, 2014 – before filing their Fed.R.Civ.P. 55(c) motion to vacate. (Dkt. # 457).  Coincidentally, that was just five days after the SEC had moved for an entry of final default judgment against them.  (Dkt. # 451).  A briefing schedule was set on January 29th, giving the SEC until February 28th to respond and allowing the default defendants to file a reply by March 14th.  (Dkt. # 463).  As one might expect, March 14th came and went with no reply from the default defendants and no motion for an extension of time. In fact, no reply was ever filed. There comes a time when a court must say, "enough is enough." *See Pyramid Energy, Ltd. v. Heyl & Patterson, Inc.*, 869 F.2d 1058, 1062 (7th Cir. 1989).

---

[3] That turned out to be somewhat of an exaggeration.

**Analysis**

In order to vacate the entry of default prior to the entry of final judgment, a defendant must show: "(1) good cause for the default; (2) quick action to correct it; and (3) a meritorious defense to the complaint." *Wehrs v. Wells*, 688 F.3d 886, 890 (7ᵗʰ Cir. 2012); *Cracco v. Vitran Exp., Inc.*, 559 F.3d 625, 630-31 (7ᵗʰ Cir. 2009). On the one hand, the Seventh Circuit has said that the standard is a "lenient" one. *Cracco*, 559 F.3d at 631. On the other, it has said that it "no longer disfavors default judgments . . . ." *Comerica Bank v. Esposito*, 215 Fed.Appx. 506, 508 (7ᵗʰ Cir. 2007); *Stafford v. Mesnik,* 63 F.3d 1445, 1450 (7ᵗʰ Cir. 1995). Whether these are varying stances or merely different formulations of the same thing is not important. No matter what, the result is the same since this is not a close case.

**1.**

The default defendants submit that Mr. von Hase's alleged treatment for alcoholism constitutes good cause for their default. They contend that "the fact that the[y] had participated in the case for years, including submitting to two depositions before the SEC, demonstrates that the failure during the April through October 2013 time period was an aberration due to von Hase's personal medical issues. (Dkt. # 457, at 6). As we know, the default defendants' record of participation in these proceedings is a poor one, missing multiple deadlines and not even bothering to request extensions of time. Their sporadic cooperation and general disinterest in the proceedings resulted in one default judgment being entered against him already. Interestingly, the second of the depositions was a condition for the SEC not opposing his motion to vacate his first default, so it is not as though Mr. von Hase was a willing participant. If anything, the record shows that Mr. von Hase's lack of participation from April through October 2013 was not an aberration, but consistent

with his customary disregard for his and CTA Worldwide's obligations in this case.

As for his medical excuse, the cursory evidence Mr. von Hase has submitted does not show that he is entitled to the relief he seeks. Quite the contrary. The totality of the evidence consists of three terse, conclusory, unsupported statements from three doctors in the Bahamas. The first is from Dr. Eugenia Combie, a "consultant psychiatrist," who "certif[ies]" not under oath that von Hase spent thirteen days in a rehabilitation facility from September 7 through September 19, 2013, where he was treated for alcohol withdrawal and Polysubstance dependence. He was committed under the Mental Health Act of the Bahamas, having been evaluated – by whom she does not say – as a danger to himself and others. *Id.* (*Motion to Vacate*, Ex. A, Dkt. # 457).

Dr. Combie ends her laconic, eight-line letter with the conclusion that Mr. von Hase "was not able to confer with his counsel during" the period of September 7 to September 19, 2013. Dr. Combie's letter is silent regarding Mr. von Hase's failure to communicate with his lawyer during the 181 days between April 12, 2013 through October 23, 2013 (excluding September 7 to September 19). Thus, even if one were to fully credit Dr. Combie's letter, all it does is account for 13 days in September and makes no attempt to explain Mr. von Hase's abandoning his responsibilities in this case for six months.

Curiously, Dr. Combie, although a psychiatrist, had no further involvement with Mr. von Hase, instead returning him, *at Mr. von Hase's request*, to "follow up" with his general physician, Dr. Ian Kelly. (*Motion to Vacate*, Ex. A, Dkt. # 457). Dr. Kelly tells us that during the six-month period from April through October 2013 he treated Mr. von Hase for "medical issues relating to severe alcoholism." What, he does not say. He concludes that during that entire period, Mr. von Hase "was incapacitated and was not able to "confer with counsel." Indeed, he goes so far as to say

7

that during that entire seven month period he was not even " able to contact family members."

(*Motion,* Ex. B, Dkt. #457-1, at 4-5). Friends are not mentioned, but presumably Dr. Kelly means

to include them as well.

But the questions that immediately arise are how was he living during this extended period

of complete reclusiveness? Who took care of him? Where was he living and how was he functioning

if contact even with family and friends was forbidden? How often was Dr. Kelly seeing him during

these seven terrible months of isolation, for surely constant care must have been required given Mr.

von Hase's dire situation? And if his condition warranted the degree and duration of isolation

adverted by Dr. Kelly, one would expect some explanation, not merely a tendentious conclusion that

served the "patient's" interests. These and like questions leap to mind but are not answered by Dr.

Kelly, who contents himself with a bare conclusion.

Implausible or improbable testimony need not be accepted, *United States v. Johnson,* 729F.3d

710, 715 (7th Cir.2013), and fact-finders are permitted to "'use their common sense' " and "'evaluate

the facts in light of their common knowledge of the natural tendencies and inclinations of human

beings.'" *United States v. Ayala*, 887 F.2d 62, 67 (5th Cir. 1989). *See Coggeshall v. United States*

*ERS),* 69 U.S. (2 Wall.) 383 (1865).[4]

In any event, Dr. Kelly says that following Mr. von Hase's release from the hospital on

September 19th, "his condition has improved significantly." (*Motion*, Ex. B, Dkt. #457-1, at 4).

Therefore, there were no medical reasons for him to have waited until January 2014 to file the

_____

[4]Common sense and human experience always have a role to play in judging. *United States v. Montoya De Hernandez,* 473 U.S. 531, 542 (1985); *Greenstone v. Cambex Corp.,* 975 F.2d 22, 26 (1st Cir.1992) (Breyer, C.J.); *Cooney v. Rossiter,* 583 F.3d 967, 971 (7th Cir.2009); Posner, How Judges Think at 116 (Harv. Univ. Press 2008).

motion to vacate default. Finally, although Dr. Kelly says that von Hase continued to be "treated by

Dr. Combine [sic]," that statement is not confirmed by Dr. Combie, whose letter does not even

suggest that he saw von Hase after his release to Dr. Kelly on September 19th. Quite the contrary, the

letter is quite clear in saying that thereafter he was under the care of Dr. Kelly pursuant to Mr. von

Hase's own request.

Dr. Kelly' statement that Mr. von Hase was so incapacitated from "severe alcoholism" that

for a seven  month period he was not even "able to contact family members" or "confer with his

lawyer" is utterly unsupported.  Not a single treatment note or other medical record was provided

by Dr. Kelly. Unfortunately for Mr. von Hase,  *ipse dixits* are never enough. *General Elec. Co. v.

Joiner,* 522 U.S. 136, 146 (1997); *United States v. Suffield Terrace, Skokie, Ill.,* 607 F.3d 504, 510

(7th Cir.2010). "'An opinion has a significance proportioned to the sources that sustain it.'" *Huey

v. United Parcel Service, Inc.,* 165 F.3d 1084, 1087 (7th Cir.1999). Dr. Kelly's opinion has nothing

to sustain it beyond his unsupported and in part improbable conclusions.

The final piece of evidence is from Mr. von Hase's dermatologist, Dr. Rosetta Ingraham.  She

treated Mr. von Hase apparently from January 2013 through October 2013 "for skin infections

relating to serious dermatological issues." (*Motion*, Ex. C at 7, Dkt. #457-1, at 7).  She feels he was

unable "to confer with his counsel" from August 2013 through October 2013 due to a "disoriented

state of mind and a constant itching pain." (*Id.*).  But this would leave a seven-month period during

which, at least according to her, he would have been able to at least *contact* his lawyer.  In this regard

then, Dr. Ingraham does not support Dr. Kelly's more extended period of incapacity, which

according to him ran from April 2013 through October 2013. Predictably, not a single treatment note

accompanies Dr. Ingraham's one page, seven paragraph declaration. Her *ipse dixits* are no better than

Dr. Kelly's.

Further, although she states that she treated him for the nine month period from January to October 2013, there is no claim by Dr. Ingraham that Mr. von Hase was unable to contact family members or consult with his counsel between January and July 2013. She merely states that in her opinion in the three month period between August and October 2013, Mr. von Hase had a "disoriented state of mind" that precluded his "conferring with his counsel." She does not say he could not contact family members or even that he could not "contact" his lawyer. Contacting and conferring with a lawyer are quite different things. In sum, there is absolutely nothing to explain the basis for her conclusion about his incapacity, and thus they fare no better than Dr. Kelly's.

Finally, it is significant that each of the doctors' submissions contains the identical statement that Mr. von Hase was "unable to confer with his counsel." Obviously, it was not by chance that each of them used this phrase. But it is one thing to say that Mr. von Hase could not confer with his counsel and quite another to say that he could not "contact" him. "Conferring" with a lawyer connotes some period of discussion and analysis. "Contacting" counsel does not. A simply phone call or email from Mr. von Hase to his lawyer at any time during the period April to October alerting him to his supposed situation would have sufficed for a dedicated and punctilious lawyer like Mr. McGurk to have filed a simple statement with the court regarding Mr. von Hase's situation. Of course, he did not do that, and nothing in either Dr. Kelly or Dr. Ingraham's submissions says that Mr. von Hase was incapable of "contacting" Mr. McGurk in the seven month period from April - October 2013 and alerting him to his plight.

We shall assume for the sake of argument that during the thirteen days in September 2013 that Mr. von Hase was at the rehabilitation facility, he was unable to "confer" with his counsel. But

in the months prior to September 2013 – which included the June 13th date when the answer to the complaint was due – the default defendants did nothing. Only Dr. Kelly tries to exonerate his lack of action in this period. But for the reasons discussed, the attempt fails.

In short, all we have to go on are the conclusory (and partly conflicting) opinions of two doctors. Significantly, not only is there no attempt to amplify on their conclusory statements, they are unsupported by any treatment notes or medical record of any kind. It was to ensure that there would be an adequate basis to evaluate any statement made by doctors that I cautioned counsel at the October 23, 2013 hearing that he would have to produce records of treatment to support a motion to vacate the default. Not only have records not been produced, there has been no explanation given for their conspicuous absence.

The reason for the caution to von Hase's counsel about blind acceptance of opinions is that treating physicians may "bend over backwards" and "want to do a favor" for their patients and thus too easily conclude that they are incapacitated. *See, e.g., Schmidt v. Astrue*, 496 F.3d 833, 842 (7th Cir. 2007); *Hawkins v. First Union Corporation Long-Term Disability Plan*, 326 F.3d 914, 917 (7th Cir. 2003); *Dixon v. Massanari*, 270 F.3d 1171, 1177 (7th Cir. 2001). While these are Social Security and ERISA cases, the principle they espouse necessarily has wider application, based as it is on a realistic appraisal of "psychological tendencies," *Withrow v. Larkin,* 421 U.S. 35, 47 (1975), and human motivation.[5] Without records of treatment, there is no way to determine whether this bias was

---

[5]  Moreover, there is a substantial body of authority in this and other Circuits recognizing that that an expert can be found to say whatever the principal needs him to say. *See Mid-State Fertilizer Co. v. Exchange National Bank of Chicago,* 877 F.2d 1333, 1340 (7th Cir. 1989) (the expert "cast aside his scholar's mantel and became a shill for Mid-State."); *Minasian v. Standard Chartered Bank, PLC*, 109 F.3d 1212, 1216 (7th Cir. 1997); *Tellabs Operations, Inc. v. Fujitsu Ltd.*, 283 F.R.D. 374, 385-386 (N.D.Ill.2012)(collecting judicial and scholarly authorities).

(continued...)

– or was not – at work. Certainly, I am not bound to accept uncritically even statements under oath, from any witness, including doctors. *See, e.g., Cunningham* v. Masterwear Corp., 569 F.3d 673, 674–75 (7th Cir. 2009)(physician had to present evidence to support his opinion); *O'Conner v. Commonwealth Edison Co.,* 13 F.3d 1090 (7th Cir.), *cert. denied*, 512 U.S. 1222 (1994)(physician's opinion was unreliable where it was unsupported by anything to justify his conclusion).

The default defendants' failure to produce supporting medical records or explain their absence is significant for another reason. If a party has it peculiarly within his power to produce evidence that would elucidate a matter in issue – and Mr. von Hase has placed his medical condition squarely in issue – the fact that he does not do so permits an inference that the testimony or records, if produced, would be unfavorable or not supportive. *Graves v. United States*, 150 U.S. 118, 121 (1893); *Gilbert v. Cosco Inc.*, 989 F.2d 399, 405 (10th Cir.1993); *Miksis v. Howard*, 106 F.3d 754, 763 (7th Cir. 1997). There is no claim that the medical records were not available, did not exist, or that the doctors refused to produce them.

Also at play is the striking coincidence that Mr. von Hase recovered from his severe, incapacitating alcoholism and painful itching and regained his senses about the week that the SEC moved for an entry of final default judgment against him. While, of course, possible, in the overall context of this case, the timing seems too convenient. What the Seventh Circuit said in *United States v. Rodriguez*, 975 F.2d 404 (7th Cir. 1992) is not without some force here: "In isolation, any one of the facts described in the Government proffers might conceivably be dismissed as mere coincidence. Considering the proposed evidence in total, it more than represents the sort of suspicious

---

[5](...continued)

circumstances that convince us.…" *See also Coggeshall v. United States (THE SLAVERS),* 69 U.S. 383 (1865)("Circumstances altogether inconclusive, if separately considered, may, by their number and joint operation, especially when corroborated by moral coincidences, be sufficient to constitute conclusive proof." ).

Finally, I think it significant that Mr. von Hase has chosen not to file any affidavit or declaration in support of the notion to vacate. He, more than anyone, could speak to his claimed seven month incapacity and the events that his motion says prevented him from even having any contact with his family members. Nothing in the doctors' conclusory statements remotely suggest that he is incapable of recounting his mental state during the period April through October 2013 – the period when Dr. Kelly and only Dr. Kelly says he was incapacitated.  If his claimed alcoholism resulted in some inability to recount what occurred – although it seems improbable, to say the least, that anyone would in effect have amnesia for a seven month period – he certainly could say so under oath. He has chosen instead to rely on conclusory, unconvincing, and conflicting statements from Dr. Kelly and Dr. Ingraham, unsupported by a scintilla of evidence beyond their own assertions.  Even accepting Dr. Combie's statement only accounts for a two week period in September 2013. On the state of this record, I do not find that the default defendants have carried their burden of demonstrating good cause for their default.

**2.**

The default defendants have also failed to show that they took swift action to correct the default.  The default was entered October 23, 2013. Even Dr. Kelly only places the period of Mr. von Hase's incapacity through October, and notes that Mr. von Hase's condition "improved significantly" following his release from the treatment facility on September 29, 2013. Yet, Mr. von Hase still did

not file a motion to vacate until January 28, 2014, *three months* later. There is nothing in this record that supports that sort of disregard of his obligations as a party in this litigation.

His claim that the "location of the physicians" – meaning in the Bahamas – prevented timely action by him certainly does not. The motion could have been filed by his counsel long before the end of January, and any supporting information submitted thereafter, if it was not immediately available. Moreover, Mr. von Hase was in the Bahamas where his doctors were. They were a phone call away. He could have asked them to write the same cursory statement they ultimately submitted and the requests would have taken but a few minutes.[6] Mr. von Hase does not submit anything to show that he tried promptly to get statements from the doctors and that he was rebuffed. His submission, therefore, leaves unexplained why it took three months to file the motion and to gather the exceedingly brief and cursory notes that were ultimately submitted. Call this what you will, it is anything but "swift" action. It is however action that is consistent with his conspicuously insouciant attitude towards this case throughout its duration.

The cases simply do not support the contention that von Hase acted with the degree of care and dispatch the law requires. *See, e.g., Casio Computer Co., Ltd. v. Noren*, 35 Fed.Appx. 247, 250-251 (7th Cir.2002)(55 days too long for *pro se* defendant to have waited); *C.K.S. Eng's, Inc. v. White Mountain Gypsum Co.,* 726 F.2d 1202, 1208 (7th Cir.1984) (criticizing a two-month delay); *Jones v. Phipps,* 39 F.3d 158, 165 (7th Cir.1994)(5 weeks for incarcerated prisoner too long); *Wells Fargo Equipment Finance, Inc. v. PMRC Services, LLC*, 2011 WL 635861, 2 (N.D.Ill. 2011)(ten week delay cannot be termed swift action). By the time the default defendants finally acted, all other defendants had settled. The trial date was just six weeks away and had to be stricken. (Dkt. # 463).

_____

[6] Whether the doctors promptly complied would have been beside the point.

**3.**

Finally, the default defendants assert that they have a meritorious defense to the SEC's claims because Mr. von Hase is a German national residing in the Bahamas. As such, he claims he did not have to register as a broker/dealer and was beyond the reach of the United States securities laws. His "argument" consists of a scant few sentences and is unsupported by any citation to authority. The Seventh Circuit has consistently held that such conclusory, unsupported arguments are insufficient to establish a meritorious defense. *Wehrs v. Wells*, 688 F.3d 886, 890-91 (7th Cir. 2012)(collecting cases).[7] Moreover, this is a defense to only one of the four counts against him. Mr. von Hase raises no defense at all to the fraud claims the SEC has brought in Counts I, II, and III, of its complaint.

**4.**

Entry of a default judgment is a last resort. A trial on the merits is the favored resolution of all cases. *Cracco*, 559 F.3d at 631. But this is not simply a case where the default defendants have failed to show any one of the three things they are required to in order to vacate their default. What's past is prologue. The backdrop of the default defendants' repeated and glaring failures to meet deadlines throughout this case should not and cannot be ignored. Those failures occurred when Mr. von Hase had no alleged health issues and reached a crescendo precipitating the first default having to be entered against him and his company. His more recent behavior is a continuation of that disregard for the case. Clearly, that first *vacated* default was a less drastic sanction that had no lasting effect. *See Domanus v. Lewicki*, 742 F.3d 290, 301 (7th Cir. 2014)(in discovery abuse context, default

---

[7] This is merely a particularized application of the principle that skeletal, perfunctory, and unsupported arguments are waived. *Bass v. Joliet Public School Dist. No. 86,* _F.3d_, 2014 WL 1229578, 5 (7th Cir.2014 ); *McKevitt v. Pallasch,* 339 F.3d 530, 533 (7th Cir.2003)(Posner, J.); *Kenall Mfg. Co. v. H.E. Williams, Inc*. 2013 WL 427119, 16 (N.D.Ill.2013)(collecting cases).

judgment appropriate where there is a record of delays and less drastic sanctions have been unavailing); *Wellness Intern. Network, Ltd. v. Sharif*, 727 F.3d 751, 779 (7th Cir. 2013)(also in discovery context, "despite the severity of the sanction, a court is not required to issue less severe sanctions before deciding to enter default judgment . . . ."). There is no rule that defendants are entitled to three defaults before they are out. That is a rule for baseball not litigation.

## CONCLUSION

The record in this case shows quite convincingly that throughout the litigation the default defendants were unconcerned with court orders, with deadlines, and with their obligations to participate fully and actively in the case. They should have paid heed to the Seventh Circuit's warning in *United States v. Golden Elevator, Inc.,* 27 F.3d 301, 302 (7th Cir. 1994): "'Lawyers and litigants who decide that they will play by rules of their own invention will find that the game cannot be won.'" The motion of defendants, Stefan von Hase and CTA Worldwide, S.A., to vacate the default (Dkt. # 457) is DENIED.

**ENTERED:** _____
**UNITED STATES MAGISTRATE JUDGE**

**DATE:** 4/9/14