**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| UNITED STATES SECURITIES AND EXCHANGE COMMISSION, | ) ) ) | |
| Plaintiff, | ) ) | No. 09 C 676 |
| v. | ) ) | Magistrate Judge Jeffrey Cole |
| STEFAN H. BENGER, et al., | ) ) ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

### INTRODUCTION

Stefan von Hase and his company, CTA Worldwide, S.A., two defendants among several in this case, move for an order vacating the default entered against them October 23, 2013. [Dkt. #457].[1] The SEC has objected – and quite vigorously. [Dkt. #471]. Mr. von Hase – resident of the Bahamas – claims that from April through October 2013, he was essentially incapacitated by alcoholism and could not attend to his obligations and those of CTA Worldwide to participate in this case. Aside from that, he paints a rather glowing picture of his participation in this case. To hear him tell it, he has dutifully responded to complaints, sat for depositions, and traveled to Chicago several times to meet with his attorney. But the reality is quite different.

### II.
### FACTUAL BACKGROUND

The SEC filed this suit on February 3, 2009, naming eight defendants and two relief defendants, Mr. von Hase and CTA Worldwide ("the default defendants"). (Dkt. #1). The default

---

[1] The other defendants have settled with the SEC.

defendants moved to dismiss the complaint on the ground (among others) that the court lacked personal jurisdiction over them. (Dkt. #70). Judge Lefkow denied the motion, finding that "both [von Hase] and CTA continually conduct business in the United States and in doing so, have sought to benefit from its laws." *SEC v. Benger*, 2009 WL 1851186, at *8 (N.D. Ill. 2009).

The default defendants' answer to the Complaint was due on July 14, 2009, but they missed that deadline – by quite a bit. It was not until August 20th that they even sought an extension of time. The excuse was that Mr. von Hase was based in the Bahamas, and his counsel had a trial in Virginia during August. (Dkt. # 153). While this did not account for the default defendants' inactivity during the entire month of July, Judge Lefkow nevertheless granted the motion and gave them until September 4, 2009, to file their answer. (Dkt. # 159). But that deadline came and went any filing and without a request for an additional extension. The answer was not filed until October 15, 2009, well over a month after it was due. (Dkt. # 180). No motion for leave to the answer, *instanter,* was made.

On April 1, 2010, the SEC filed an amended complaint which, among other things, converted von Hase and CTA from relief defendants to full defendants. (Dkt. # 238). On April 8, 2010, Judge Lefkow ordered all defendants to respond to the amended complaint by May 6th. (Dkt. # 239). With the exception of the default defendants, all the defendants complied. Again, the default defendants did not seek extra time to file their answer. The SEC subsequently informed the default defendants that it would move for a default judgment if they did not communicate their intent to file an answer by May 19th. (Dkt. # 253, Ex. 1). The default defendants ignored the SEC's communication, and the SEC filed its motion as promised. (Dkt. # 253).

And so, Judge Lefkow entered the first default judgment against the default defendants on June 22, 2010. (Dkt. # 261). The judge set a remedies prove-up hearing for August 17, 2010. (Dkt. # 258).[2] Judge Lefkow postponed that hearing until September 2, 2010, at which time the default defendants asked for leave to file a motion to vacate the default judgment. (Dkt. # 264; 266). They filed their motion on September 9th (Dkt. #267), and the SEC agreed not to oppose it if the default defendants provided complete discovery responses, filed an answer to the complaint, and produced Mr. von Hase for a deposition. On November 16, 2010, the default defendants finally sought and were subsequently granted leave to file their answer to the amended complaint *instanter*. (Dkt. # 282; 284). The parties then consented to jurisdiction here under 28 U.S.C. § 636 (c).

In the wake of *Janus Capital Group, Inc. v. First Derivative Traders'* holding that "[f]or purposes of Rule 10b-5, the maker of a statement is the person or entity with ultimate authority over the statement, including its content and whether and how to communicate it," 131 S.Ct. 2296, 2302 (2011), the SEC sought and was granted leave to file its current amended complaint on December 20, 2011. (Dkt. #332-334). Defendants filed various motions to dismiss and for summary judgment and, following extensive briefing and oral argument, the court issued a series of rulings in February and March 2013, granting the motions in part and denying them in part. (Dkt. # 405; 411-413; 415; 418-419). *See S.E.C. v. Benger*, 2013 WL 593952 (N.D.Ill. 2013); *S.E.C. v. Benger*, 931 F.Supp.2d 908 (N.D.Ill. 2013); *S.E.C. v. Benger*, 931 F.Supp.2d 904 (N.D.Ill. 2013); *S.E.C. v. Benger*, 931 F.Supp.2d 901 (N.D.Ill. 2013); *S.E.C. v. Benger*, 934 F.Supp.2d 1008 (N.D.Ill. 2013).

---

[2] On the same day it filed its default motion, the SEC filed a motion to compel the production of documents from the default defendants, based on their failure to make a complete production in response to the SEC's prior document requests. (Dkt. # 255). I denied the SEC's motion for failure to comply with Local Rule 37.2 (Dkt. # 257), and later, after Judge Lefkow's ruling, denied it as "moot in light of the default judgment just entered by Judge Lefkow." (Dkt. # 259).

3

After the SEC elected to stand on the surviving claims in its complaint, certain defendants moved for an extension of time to answer the complaint. (Dkt. #425). The motion was granted, and the defendants were given until June 13, 2013 to answer. (Dkt. # 425; 427). Yet again, the default defendants failed to file their answer by the deadline or move for a further extension of time.

On August 26, 2013, Mr. von Hase's counsel filed a motion to withdraw as the default defendants' attorney, explaining that, since early in 2013, his clients had communicated with him less frequently. He had not heard from Mr. von Hase since April 13, 2013, despite sending him thirteen emails and leaving twelve voicemails. (Dkt. #435). He said he made several other efforts to contact Mr. von Hase, from asking his friends about him, to contacting the Bahamian police. Finally, counsel was directed to the honorary German consul who said von Hase had been drinking heavily and had withdrawn from social contact. (Dkt. # 435). The default defendants' counsel attempted to FedEx a letter to Mr. von Hase, but the delivery service was unable to gain entrance to Mr. von Hase's residence. Conceding that the case must go forward, the default defendants' lawyer asked for leave to withdraw as counsel. (Dkt. # 435). The motion was granted, and the default defendants were ordered to answer the complaint by October 7, 2013. (Dkt. # 442). They did not do so.

On October 23, 2013, the court granted the SEC's oral motion for entry of default against the default defendants. (Dkt. # 447). Coincidentally, Mr. von Hase's counsel had apparently re-established contact with Mr. von Hase and was allowed to re-enter the case. (Dkt. # 447). He explained that Mr. von Hase had endured a "lengthy hospitalization" for alcoholism. (Dkt. # 471-1,10/23/2013 Hrg. Tr. at 3:21-25). That turned out to be somewhat of an overstatement as Mr. von Hase's stay in a rehabilitation facility was 13 days. Given the history of what had occurred with the

4

default defendants, and since "[n]othing is simpler [for a litigant] than to make an unsubstantiated allegation," *Parko v. Shell Oil,* 739 F.3d 1083, 1086 (7th Cir. 2014), I told Mr. von Hase's counsel that I would need something more than Mr. von Hase's word given through his lawyer, who of course had no first hand information at all. Accordingly, I advised counsel that any motion to vacate the default must be supported by evidence in the form of hospital and doctors' records, documenting his stay in the hospital and visits with his doctors. (# 471-1,10/23/2013 Hrg. Tr. at 9:6-11). Counsel agreed. (*Id.*).

After this hearing, the default defendants took absolutely no action to cure their default or answer the complaint for another three months – until January 28, 2014 – before filing their Fed.R.Civ.P. 55(c) motion to vacate. (Dkt. # 457). Again coincidentally, that was just days after the SEC had moved for an entry of final default judgment against them. (Dkt. # 451). The essence of Mr. von Hase's argument is that the SEC's response to the motion to vacate the defaults "attempts to divert the Court's attention from the reality of the posture of this unique case." (*Reply Br.* at 1).[3] In his view, he and his company, CTA Worldwide, have always been vigilant and faithful to their obligations in this case, and any lapses were attributable to Mr. von Hase's seven-month period of total incapacitation due to alcoholism. The SEC vehemently disagrees.

### III.
### ANALYSIS

#### A.
#### Standard of Review

A party moving to vacate a default order must show: (1) good cause for the default, (2) quick

---

[3] The Reply brief was not filed until April 28, 2014 because Mr. Von Hase's counsel had an accident and was unable to file the brief before then.

action to correct it, and (3) a meritorious defense to plaintiff's complaint. *Wehrs v. Wells*, 688 F.3d 886, 890 (7th Cir. 2012); *Cracco v. Vitran Exp., Inc.*, 559 F.3d 625, 630-31 (7th Cir. 2009). *Compare Sims v. EGA Products, Inc,.* 475 F.3d 865, 868 (7th Cir.2007)("Rule 55(c) requires 'good cause' for the judicial action, not 'good cause' for the defendant's error; as used in this Rule, the phrase is not a synonym for 'excusable neglect.'" ).

Defaults are available when a party wilfully disregards pending litigation. In *Calumet Lumber, Inc. v. Mid–America Indus., Inc.,* 103 F.3d 612 (7th Cir.1997), the court sustained entry of default judgment where counsel knowingly skipped a hearing and failed to answer a cross-claim altogether. *See also Pretzel & Stouffer,* 28 F.3d at 44 (holding entry of default proper where party did not file its answer or attend a status hearing). While defaults should not be entered precipitately, *Sims v. EGA Products, Inc*.(7th Cir.2007), the Seventh Circuit has said that it "no longer follows the earlier doctrine disfavoring defaults," *O'Brien v. R.J. O'Brien & Associates, Inc*. 998 F.2d 1394, 1401 (7th Cir.1993) or default judgments. *Comerica Bank v. Esposito*, 215 Fed.Appx. 506, 508 (7th Cir. 2007).

Even if a party can justify his inattention to his obligations, he must show that he moved promptly to vacate the default. Waiting fifty-five days to file a Rule 60(b) motion has been held too long, as have delays of less than five weeks and one of two months. *See* the cases collected in *Casio Computer Co., Ltd. v. Noren,* 35 Fed.Appx. 247, 250-25 (7th Cir. 2002).

**1.**

The default defendants submit that Mr. von Hase's treatment for alcoholism constitutes "good cause" and requires that the defaults be vacated. But as *Tygris Asset Finance, Inc. v. Szollas,* 2010 WL 2266432 (N.D.Ill.2010), the case relied on extensively in the Reply Brief, holds, a litigant's

"personal circumstances," including health problems and/or family issues, do not constitute "good cause" or "excusable neglect" for failing to file a responsive pleading: "'When unpredictable and unfortunate circumstances arise ... [a litigant] should inform the court before the filing deadline passes why he will be unable to comply, and if that is not possible, should inform the court as soon as practicably possible why the filing was late.'" *Id*. at 3. The default defendants did not do that here, and the unpersuasive, conclusory evidence Mr. von Hase has submitted does not show that he is entitled to the relief he and CTA Worldwide seek.

Quite the contrary. The totality of the evidence consists of terse, conclusory statements from three doctors in the Bahamas. The first is from Dr. Eugenia Combie, a "consultant psychiatrist," who "certif[ies]," not under oath, that Mr. von Hase spent thirteen days in a rehabilitation facility from September 7 through September 19, 2013, where he was treated for alcohol withdrawal and polysubstance dependence. The latter phrase is unexplained. Dr. Combie asserts that he was committed under the Mental Health Act of the Bahamas, having been evaluated – by whom she does not say – as a danger to himself and others. *Id.* (*Motion to Vacate*, Ex. A, Dkt. # 457). How long this condition had persisted the statement does not say.

Dr. Combie ends her laconic, eight-line letter with the conclusion that Mr. von Hase "was not able to *confer* with his counsel during" the period of September 7 to September 19, 2013. (Emphasis supplied).[4] Dr. Combie's letter is silent regarding Mr. von Hase's failure to *communicate* at all with his lawyer during the 181 day period between April 13, 2013 through October 23, 2013 (excluding September 7 to September 19). Thus, even if one were to fully credit Dr. Combie's letter,

---

[4] The word "confer" appears in all three doctors' statements. Its choice was obviously not fortuitous. *See* discussion *infra* at 10.

all it does is account for 13 days in September

.

Curiously, Dr. Combie, although a psychiatrist, had no further involvement with Mr. von Hase, instead returning him, *at Mr. von Hase's request*, to "follow up" with his general physician, Dr. Ian Kelly. (*Motion to Vacate*, Ex. A, Dkt. # 457). Dr. Kelly tells us that during the seven-month period from April through October 2013 he treated Mr. von Hase for "medical issues relating to severe alcoholism." What issues, he does not say. But he does say that "in [his] opinion," during the whole of the extended seven-month period, Mr. von Hase "was not able to confer with his counsel." Indeed, he goes so far as to say that during that entire period Mr. von Hase was "incapacitated and not able to contact family members." (*Motion,* Ex. B, Dkt. #457-1, at ¶¶ 4-5). Friends are not mentioned, but presumably Dr. Kelly means to include them as well.

But the questions that immediately arise are how was he living during this extended period of complete incapacitation? Who took care of him? Where was he living and how was he functioning if contact even with family was impossible? How often was Dr. Kelly seeing him during these seven months of isolation? Was his "opinion" based on his own knowledge or on reports from Mr. von Hase? These and like questions leap to mind, but are not answered by Dr. Kelly, who contents himself with a bare conclusion, unexplained and unsupported by a single treatment note or other medical record. But since "'[a]n opinion has a significance proportioned to the sources that sustain it,'" *Huey v. United Parcel Service, Inc.,* 165 F.3d 1084, 1087 (7th Cir.1999), *ipse dixits* are never enough. *See Kumho Tire Co., Ltd. v. Carmichael,* 526 U.S. 137, 157 (1999); *General Elec. Co. v. Joiner,* 522 U.S. 136, 146 (1997); *Echo, Inc. v. Timberland Machines & Irr., Inc.*, 661 F.3d 959, 965 (7th Cir.2011);*United States v. Suffield Terrace, Skokie, Ill.,* 607 F.3d 504, 510 (7th Cir.2010).

In any event, Dr. Kelly says that following Mr. von Hase's release from the hospital on September 19th, "his condition has improved significantly." (*Motion*, Ex. B, Dkt. #457-1, at ¶ 6). Therefore, there were no medical reasons for him to have waited over four months until January 2014 to file the motion to vacate default. He could and should have contacted his lawyer, as Judge Gottschall explained in *Tygris Asset Finance, Inc*. *See supra* at 6. He obviously did not do that or Mr. McGurk would have acted promptly.

Finally, although Dr. Kelly says that von Hase continued to be "treated by Dr. Combine [sic]," that statement is not confirmed by Dr. Combie, whose letter does not even suggest that he saw von Hase after his release to Dr. Kelly on September 19th. The letter is quite clear in saying that thereafter he was under the care of Dr. Kelly pursuant to Mr. von Hase's own request.

The final piece of "evidence" offered by the default defendants is a terse one-page, seven-paragraph Declaration from Mr. von Hase's dermatologist, Dr. Rosetta Ingraham, who treated Mr. von Hase apparently from January 2013 through October 2013 "for skin infections relating to serious dermatological issues." (*Motion*, Ex. C, ¶3, Dkt. #457-1). In her "opinion," Mr. von Hase was unable "to confer with his counsel" from August 2013 through October 2013 due to a "disoriented state of mind and a constant itching pain." (*Id.*). In this regard then, Dr. Ingraham does not support Dr. Kelly's more extended period of incapacity, which according to him ran from April 2013 through October 2013. Predictably, not a single treatment note accompanies Dr. Ingraham's Declaration. Her *ipse dixits,* however, are no better than Dr. Kelly's.

Further, although she states that she treated him for the nine-month period from January to October 2013 (Ex. A, ¶3), there is no claim by Dr. Ingraham that Mr. von Hase was unable to contact family members or speak with his counsel between January and July 31, 2013. She merely states

9

that in her opinion in the three-month period between August and October 2013, Mr. von Hase had a "disoriented state of mind" that precluded his "confer[ring]" with his counsel. Even accepting these conclusions at face value, this would mean that at all other times he could "confer" with his lawyer, and at all times between January and August 2013, he was able to *contact* his lawyer and his family and friends.

It is significant that each of the doctors' submissions contains the identical statement that Mr. von Hase was "unable to *confer* with his counsel." Obviously, it was not by chance that each of them used this phrase, which no doubt came from von Hase's lawyer, who presumably drafted the submissions for the doctors.[5] But it is one thing to say that Mr. von Hase could not "confer" with his counsel and quite another to say that he could not "contact" him. Conferring connotes the process of discussion and deliberation. By contrast, simply contacting someone does not require or involve the same deliberative process.

A simple phone call or email from Mr. von Hase to his lawyer at any time during the period April to October alerting him to his supposed situation would have sufficed for a dedicated and punctilious lawyer like Mr. McGurk to have filed a simple statement with the court regarding Mr. von Hase's situation. *See supra* at 6. Of course, he did not do that, and nothing in the submissions of either Dr. Kelly or Dr. Ingraham says that Mr. von Hase was incapable of "contacting" Mr. McGurk between April and October 2013.

We shall assume for the sake of argument that during the thirteen days in September 2013 that Mr. von Hase was at the rehabilitation facility, that he was unable to "confer" with or contact

---

[5] This is not to suggest that there is anything improper about a lawyer preparing statements for a witness to be used in a court proceeding. There is not.

10

his counsel. But in the months prior to September 2013 – which included the June 13th date when the answer to the complaint was due – the default defendants did nothing. Only Dr. Kelly tries to exonerate Mr. von Hase's lack of action in this period, and his conclusory submission is insufficient to the task.

**2.**

It was to ensure that there would be an adequate basis to evaluate any statement made by doctors that I cautioned counsel at the October 23, 2013 hearing that he would have to produce records of treatment to support a motion to vacate the defaults. Not only have records not been produced, there has been no explanation given for their conspicuous absence.[6] The reason for the caution to Mr. von Hase's counsel about blind acceptance of opinions is that treating physicians may "bend over backwards" and "want to do a favor" for their patients and thus too easily conclude that they are incapacitated. *See, e.g., Schmidt v. Astrue*, 496 F.3d 833, 842 (7th Cir. 2007); *Hawkins v. First Union Corporation Long-Term Disability Plan*, 326 F.3d 914, 917 (7th Cir. 2003); *Dixon v. Massanari*, 270 F.3d 1171, 1177 (7th Cir. 2001).

While these are Social Security and ERISA cases, the principle they espouse necessarily has wider application, based as it is on a realistic appraisal of "psychological tendencies," *Withrow v. Larkin,* 421 U.S. 35, 47 (1975), and human motivation. Without records of treatment, there is no way to determine whether this bias was – or was not – at work. Certainly, I am not bound to accept uncritically even statements under oath, from any witness, including doctors. *See, e.g., Cunningham v. Masterwear Corp.*, 569 F.3d 673, 674–75 (7th Cir. 2009)(physician had to present evidence to

---

[6] Of course, had the submissions been sufficient in themselves – that is, that they consisted of more than unsupported and un explained opinions – the absence of supporting documentation would not have been fatal.

support his opinion); *O'Conner v. Commonwealth Edison Co.,* 13 F.3d 1090 (7th Cir.), *cert. denied*, 512 U.S. 1222 (1994)(physician's opinion was unreliable where it was unsupported by anything to justify his conclusion).⁷

Also at play – although not conclusive – is the striking coincidence that Mr. von Hase recovered from his severe, incapacitating alcoholism and itching and regained his capacity to contact his lawyer right after the SEC moved for an entry of a default judgment against him. While, of course, possible, in the overall context of this case, the timing seems too convenient. *Compare In re Elm St. in City of New York,* 246 N.Y. 72, 158 N.E. 24 (1927)(Cardozo, J.)("If we may not say of such a coincidence that it is literally impossible, at least we may say that one would be surprising, and several would be marvelous."); *Murdaugh Volkswagen, Inc. v. First Nat. Bank of South Carolina*, 639 F.2d 1073 (4th Cir.1981)("coincidence piled on coincidence can ultimately constitute sufficient evidence to permit" a fact-finder to conclude that the claim of innocent error is unacceptable); *Valentino v. Village of South Chicago Heights,* 575 F.3d 664, 674 (7th Cir.2009)("It seems unlikely that Petersen would randomly decide to search only Valentino's desk and terminate her shortly thereafter, coincidentally, on the same day that Bramanti's latest letter was released."); *United States v. Rodriguez*, 975 F.2d 404 (7th Cir. 1992)("In isolation, any one of the facts described in the Government proffers might conceivably be dismissed as mere coincidence. Considering the

---

⁷ The default defendants' failure to produce supporting medical records or explain their absence is significant for another reason. If a party has it peculiarly within his power to produce evidence that would elucidate a matter in issue – and Mr. von Hase has placed his medical condition squarely in issue – the fact that he does not do so permits an inference that the testimony or records, if produced, would be unfavorable or not supportive. *Graves v. United States*, 150 U.S. 118, 121 (1893); *Gilbert v. Cosco Inc.*, 989 F.2d 399, 405 (10th Cir.1993); *Miksis v. Howard*, 106 F.3d 754, 763 (7th Cir. 1997). There is no claim that the medical records were not available, did not exist, or that the doctors refused to produce them – indeed, there is no evidence they were asked to provide them.

proposed evidence in total, it more than represents the sort of suspicious circumstances that convince us….").

**3.**

Finally, it is significant that Mr. von Hase has chosen not to file his own affidavit or Declaration in support of the motion to vacate. He, more than anyone, could speak to his claimed seven-month incapacity and the events that his motion says prevented him from even having any contact not only with his lawyer but with his family members. Nothing in the doctors' conclusory statements remotely suggest that he is incapable of recounting his situation during the period from April through October 2013 – the period when Dr. Kelly and only Dr. Kelly says he was incapacitated. If his claimed alcoholism resulted in some inability to recount what occurred – although it seems improbable that anyone would, in effect, have amnesia for a seven- month period – he certainly could say so under oath. He has chosen instead to rely on conclusory, unconvincing, and conflicting statements from Dr. Kelly and Dr. Ingraham, unsupported by a scintilla of evidence beyond their own assertions. Even accepting Dr. Combie's statement only accounts for a two week period in September 2013. On the state of this record, I do not find that the default defendants have carried their burden of demonstrating good cause warranting vacating the defaults.[8]

**4.**

Mr. von Hase contends that he acted with "swiftness" to "remedy the default," and that any delay was the inevitable result of "the location of the physicians [in the Bahamas] who treated" him for alcoholism and the "different legal requirements for providing evidence." (*Reply* at 7). After all,

---

[8]It is no answer to say that the SEC has "scoff[ed] at the evidence submitted, but has not "attempt[ed] to submit any medical evidence in opposition" to that submitted by the defendants. (Reply Br. at 7). The burden is the defendants', not the SEC's.

he says, this case has been pending for more than four years, that he and CTA Worldwide have always been cooperative and diligent and thus the several month delay in opposing the motion for default was "reasonable." (*Reply Brief* at 7). This assertion is unpersuasive.

The default was entered October 23, 2013. Even Dr. Kelly only places the period of Mr. von Hase's incapacity through October, and notes that Mr. von Hase's condition "improved significantly" following his release from the treatment facility on September 29, 2013. Yet, Mr. von Hase still did not file a motion to vacate until January 28, 2014, three months later.

Tellingly, in the three-month interim between October 23, 2013 and January 28, 2014, no motion was made by Mr. Von Hase's counsel for additional time to vacate the defaults because of difficulties in dealing with the doctors. Such a motion could have been filed long before the end of January, and any unavailable, supporting information submitted thereafter. Further proof is the absence of a Declaration in support of the motion to vacate from Mr. von Hase or his counsel regarding any sort of difficulties experienced in procuring evidence from the doctors or in securing their cooperation on any level. And there is no Declaration from anyone explaining the supposedly "different legal requirements for providing evidence" in the Bahamas. The "silence is deafening." *Muhammad v. Oliver,* 547 F.3d 874, 877 (7th Cir.2008).[9]

In place of evidence there is only the terse, conclusory statement of Mr. Von Hase's lawyer in the Reply Brief regarding the location of the doctors in the Bahamas and the unexplained "different legal requirements for providing evidence." Unfortunately for Mr. von Hase, "[a] lawyer's

---

[9] It is not the task of the court to research legal arguments for the parties., especially when that party is represented by counsel. *See United States v. McLee*, 436 F.3d 751, 760 (7th Cir. 2006); *Burdett v. Miller*, 957 F.2d 1375, 1380 (7th Cir. 1992); *Tyler v. Runyon*, 70 F.3d 458, 466 (7th Cir.1995); *LINC Fin. Corp. v. Onwuteaka*, 129 F.3d 917, 921-22 (7th Cir.1997) (collecting cases).

unsupported statements are not evidence." *United States v. Adriatico-Fernandez* 498 Fed.Appx. 596, 599, 2012 WL 6200276, 3 (7th Cir.2012). *Accord, Clifford v. Crop Production Services, Inc.*, 627 F.3d 268, 273 n.6 (7th Cir. 2010); *IFC Credit Corp. v. Aliano Brothers General Contractors, Inc.*, 437 F.3d 606, 610-611 (7th Cir.2006).

In sum, the cases simply do not support the Mr. von Hase's contention that he acted with the degree of care and dispatch that the law requires. *See, e.g., Casio Computer Co., Ltd. v. Noren*, 35 Fed.Appx. 247, 250-251 (7th Cir.2002)(55 days too long for *pro se* defendant to have waited); *C.K.S. Eng's, Inc. v. White Mountain Gypsum Co.,* 726 F.2d 1202, 1208 (7th Cir.1984) (criticizing a two-month delay); *Jones v. Phipps,* 39 F.3d 158, 165 (7th Cir.1994)(5 weeks for incarcerated prisoner too long); *Wells Fargo Equipment Finance, Inc. v. PMRC Services, LLC*, 2011 WL 635861, 2 (N.D.Ill. 2011)(ten week delay cannot be termed swift action). Defendants had settled. The trial date was just six weeks away and had to be stricken. (Dkt. # 463). Call it what you will, Mr. Von Hase's response to the default was anything but "swift" action. It is action consistent with the default defendants' conspicuously insouciant attitude towards this case.

The record in this case belies the default defendants' contention that they "had participated in the case for years, including submitting to two depositions before the SEC," thereby demonstrating that the failure during the April through October 2013 time period was an aberration due to Mr. von Hase's medical issues. (Dkt. # 457, at 6). The inescapable reality is that the default defendants' record of participation in these proceedings is a poor one, missing multiple deadlines and not even bothering to request extensions of time. Their sporadic cooperation and general disinterest in the proceedings resulted in one default judgment being entered against by Judge Lefkow. Even their submitting to depositions was not volitional, but was a condition for the SEC

15

not opposing Mr. von Hase's motion to vacate the first default. In short, the default defendants are not quite the cooperative participants the briefs contend they were. If anything, the record shows that Mr. von Hase's lack of participation from April through October 2013 was not an aberration, but was consistent with his disregard for his and CTA Worldwide's obligations in this case.

**5.**

Finally, the default defendants assert that they have a meritorious defense to the SEC's claims because Mr. von Hase is a German national residing in the Bahamas. As such, he claims he did not have to register as a broker/dealer and was beyond the reach of the United States securities laws. His "argument" consists of a scant few sentences and is unsupported by any citation to authority. The Seventh Circuit has consistently held that such conclusory, unsupported arguments are insufficient to establish a meritorious defense. *Wehrs v. Wells*, 688 F.3d 886, 890-91 (7th Cir. 2012)(collecting cases).[10] Moreover, this is a defense to only one of the four counts against him. Mr. von Hase raises no defense at all to the fraud claims the SEC has brought in Counts I, II, and III, of its complaint.

## CONCLUSION

While a trial on the merits is the favored resolution of all cases, *Cracco*, 559 F.3d at 631, Rule 55(c) recognizes that there are cases where that goal is properly subordinated to other important considerations. This is such a case. What's past is prologue. The backdrop of the default defendants' repeated and willful failures to meet deadlines throughout this case should not and cannot be ignored. The initial failures occurred when Mr. von Hase had no alleged health issues and reached

---

[10] This is merely a particularized application of the principle that skeletal, perfunctory, and unsupported arguments are waived. *Bass v. Joliet Public School Dist. No. 86,* _F.3d_, 2014 WL 1229578, 5 (7th Cir.2014 ); *McKevitt v. Pallasch*, 339 F.3d 530, 533 (7th Cir.2003)(Posner, J.); *Kenall Mfg. Co. v. H.E. Williams, Inc*. 2013 WL 427119, 16 (N.D.Ill.2013)(collecting cases).

a crescendo precipitating the first default having to be entered against him and his company. His more recent behavior is a continuation of that disregard for the case. Clearly, that first *vacated* default was a less drastic sanction that had no deterrent or lasting effect. *See Domanus v. Lewicki*, 742 F.3d 290, 301 (7th Cir. 2014)(in discovery abuse context, even default judgment appropriate where there is a record of delays and less drastic sanctions have been unavailing); *Wellness Intern. Network, Ltd. v. Sharif*, 727 F.3d 751, 779 (7th Cir. 2013)(also in discovery context, "despite the severity of the sanction, a court is not required to issue less severe sanctions before deciding to enter default judgment . . . .").

The record in this case shows quite convincingly that throughout the litigation the default defendants were unconcerned with court orders, with deadlines, and with their obligations to participate fully and actively in the case. They should have paid heed to the Seventh Circuit's warning in *United States v. Golden Elevator, Inc.,* 27 F.3d 301, 302 (7th Cir. 1994): "'Lawyers and litigants who decide that they will play by rules of their own invention will find that the game cannot be won.'" There is not "'good cause' ... to set aside the default[s]" in this case. (Reply Brief at 6).

The motion of Stefan von Hase and CTA Worldwide, S.A. to vacate the defaults (Dkt. # 457) is DENIED.

ENTERED: _____
UNITED STATES MAGISTRATE JUDGE

**DATE:** 5/27/14