IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| UNITED STATES SECURITIES | ) | |
|---|---|---|
| AND EXCHANGE COMMISSION, | ) | |
| | ) | |
| Plaintiff, | ) | No. 09 C 676 |
| | ) | |
| v. | ) | Magistrate Judge Jeffrey Cole |
| | ) | |
| STEFAN H. BENGER et al., | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

**A.**

Having obtained a default judgment against Stephan von Hase ("von Hase") and CTA Worldwide Services, S.A. ("CTA") (collectively, the "Default Defendants"), *see* November 9, 2015 Memorandum Opinion and Order [Dkt. No. 557], *S.E.C. v. Benger*, 2015 WL 6859168 (N.D.Ill. 2015), the SEC seeks imposition of civil penalties against the Default Defendants. [Dkt. No. 558].

The November 9th Opinion required the Default Defendants "to disgorge $3,031,999.45, plus prejudgment interest." Because this amount was about half that sought by the SEC, the SEC was ordered to recalculate prejudgment interest based on the lower figure. The SEC has now done so, using the IRS rate for the underpayment of taxes, and has requested prejudgment interest in the amount of $759,151.46. (As of 11/16/15). [Dkt. No. 558]. While the Default Defendants have objected to the amount of disgorgement ordered, they do not challenge either the rates used by the SEC to calculate interest or the method of calculation of the interest figure. [Dkt. No. 562 at 2].

Since the SEC had only recommended a "substantial" civil penalty, the SEC was also ordered to recommend a "specific amount for a civil penalty [it was seeking] *with a thorough*

*explanation of how it arrived at this figure.*" (*Benger*, *supra* at *9)(Emphasis in original). Acknowledging the "wide discretion" courts have in determining a civil penalty in cases such as this, the SEC has recommended a penalty in an amount equal to that ordered disgorged. [Dkt. No. 558 at 6]. *See* 15 U.S.C. § 77t(d)(2), and Section 21(d)(3) of the Exchange Act, 15 U.S.C. § 78u(d)(3)(i). The Default Defendants have objected, insisting that a penalty of $110,000 is sufficient. [Dkt. No. 562 at 5]. The only thing on which the parties agree is that the amount of the penalty should be "determined by the court in light of the facts and circumstances." 15 U.S.C. § 78u(d)(3)(B)(i).

Pursuant to section 20(d)(2) of the Securities Act, 15 U.S.C. § 77t(d)(2), and section 21(d)(3) of the Exchange Act, 15 U.S.C. § 78u(d)(3), a court may impose civil penalties for violations of the securities law. The statutory scheme consists of a three-tier system for civil penalties, with third-tier penalties available for individuals and entities that violate the securities laws in a manner involving "fraud, deceit, manipulation, or deliberate and reckless disregard of a regulatory requirement; and ... directly or indirectly resulted in substantial loss or created a significant risk of substantial losses to other persons." 15 U.S.C. §§ 77t(d)(2)(C),78u(d)(3)(B)(iii). For violations occurring after 2009, as adjusted for inflation, the maximum third-tier civil penalty available is equal to either the defendant's gross pecuniary gain or $150,000 per violation for natural persons and $725,000 per violation for other persons. See id.; 17 C.F.R. § 201.1004, tbl.IV (2009). In determining whether a civil penalty is appropriate, the court may take into consideration a defendant's ability to pay. *SEC v. Spencer Pharmaceutical Inc.*, 2015 WL 5749436, at *7 (D.Mass., 2015); *SEC v. Tropikgadget FZE*, 2015 WL 7009107, at *8 (D.Mass. 2015).

The SEC's recommendation is based on several factors. First, the SEC contends that the Default Defendants' illegal behavior warrants "a substantial penalty, one that reflects (among other

things) the magnitude of their fraud and the financial harm suffered by investors." [Dkt. No. 558 at 2]. According to the SEC, a civil penalty in the amount that matches the disgorgement acknowledges both the offensiveness of Default Defendants' illegal conduct and the financial harm it inflicted on investors. Second, in the SEC's view, a third-tier penalty equal to disgorgement, although substantial, falls in the middle of the range of penalties the court could assess under the facts of this case.

The Default Defendants view the matter quite differently. They contend that as a matter of "fairness," [Dkt. No. 562 at 6], the SEC's insistence on a substantially larger penalty than that imposed on Defendant Benger who settled with the SEC and was required to disgorge only $422,000 plus prejudgment interest of $27,000 should be rejected. [Dkt. No. 562 at 4]. In short, it is the Default Defendants' position that they are being penalized for not settling with the SEC, and that granting the SEC's requested penalty would be an abuse of discretion. *Id.*

**B**.

There are various methods for determining the appropriate amount of a civil penalty under the federal securities statutes. Some courts have assessed penalties on a "per violation" basis, so that that each instance of misconduct factors in the computation of the dollar amount of the fine.[1] That method finds support in the text of the penalty statutes, which provide that a fine may be imposed for "each violation." *See* 15 U.S.C. §§ 77t(d), 78u(d)(3). However, applying that analysis to the facts of this case would yield a monetary penalty in the tens-of-millions of dollars. The SEC has not

---

[1] *See, e.g., SEC v. Kenton Capital, Ltd.*, 69 F. Supp. 2d 1, 17 n.15 (D.D.C. 1998) (court assessed third-tier penalty of $1.2 million by multiplying maximum statutory penalty amount by number of defrauded investors); *SEC v. Colonial Inv. Mgmt. LLC*, 659 F. Supp. 2d 467, 503 (S.D.N.Y. 2009) (court found 18 violations of the same regulation and imposed a fine 18 times the statutory penalty amount).

recommended calculating the civil penalty in this way.

The "per violation" approach can be applied in other ways as well. Some courts have used it to impose fines based on the number of laws violated[2] or the number of separate "schemes" involved.[3] Here, the SEC's Second Amended Complaint charges Default Defendants with violating three separate statutes—Section 17(a) of the Securities Act, and Sections 10(b) and 15(a) of the Exchange Act. It further alleges they employed four fraudulent Regulation S offerings (excluding the IBI offering). (Sec. Am. Compl. ¶ 55; *see also* dkt. no. 45-1 at Ex. A). Fixing Default Defendants' fine to the number of separate statutes violated (three) or the number of fraudulent schemes (four), however, results, in the SEC's view, in a civil penalty that is too low. [Dkt. No. 558 at 4].

In addition to the "per violation" approach, courts have imposed penalties equal to the "gross amount of pecuniary gain" to defendants.[4] Under this method, the defendant's gross "pecuniary gain" can include prejudgment interest. *SEC v. Koenig*, 557 F.3d 736, 744-45 (7th Cir. 2009). Here, the disgorgement, not including prejudgment interest, is $3,031,999.45. "Assessing" a civil penalty equal to that amount is substantial, but is, according to the SEC not nearly as high as the fine the Court could impose based on the number of defrauded investors. And, says the SEC, it is not too

---

[2] *See SEC v. Shehyn*, 2010 WL 3290977, at *8 (S.D.N.Y. Aug. 9, 2010) (imposing five third-tier penalties—then $120,000 each—based on defendant's violation of five securities laws).

[3] *See, e.g., SEC v. Lipkin*, 2006 WL 435035, at *4 (E.D.N.Y. Jan. 9, 2006) (imposing two $100,000 penalties based on defendants' involvement in "two kickback schemes" causing "potentially at least 45 violations of the securities laws").

[4] *See, e.g., SEC v. Koenig*, 532 F. Supp. 2d 987, 995 (N.D. Ill. 2007); *SEC v. Locke Capital Mgmt., Inc.*, 794 F. Supp. 2d 355, 371 (D.R.I. 2011) (court found multiple statutory violations and imposed penalty equal to pecuniary gain of nearly $1.8 million); *SEC v. Haligiannis*, 470 F. Supp. 2d 373, 386 (S.D.N.Y 2007) (court imposed penalty equal to $15 million of ill-gotten gains); *SEC v. Invest Better 2001*, 2005 WL 2385452, at *5 (S.D.N.Y. May 4, 2005).

low, as would be the case if the Court tied the penalty to the number of laws violated or offering schemes used in the fraud." [Dkt. No. 558 at 5].

The SEC also contends that based on their retention of anonymous boiler room agents and their diversion of funds to bank secrecy havens such as Switzerland and Cyprus (Sec. Am. Compl. ¶¶ 27, 61), there is "a real possibility" Default Defendants personally pocketed more than $3 million. [Dkt. No. 558 at 4]. The Default Defendants quite correctly object to this conjecture. [Dkt. No. 562 at 3]. "Hypothesis is not proof," *Louth v. McCollum,* 424 F.3d 631, 634 (7th Cir. 2005), and the Seventh Circuit "has long 'reject[ed] the idea that speculation can be employed as a substitute for proof.'" *United States v. Landry,* 257 F.2d 425, 431 (7th Cir. 1958). *See also In re Cohen,* 507 F.3d 610, 614 (7th Cir. 2007); *United States v. Holland,,* 445 F.2d 701, 793 (D.C.Cir. 1971). And so, I reject the SEC's theorization and its use as a basis for determining the amount of a civil penalty in this case.

The fact that penalty statutes should not be applied mechanically, *Collins v. SEC*, 736 F.3d 521, 526-27 (D.C. Cir. 2013), accounts for the fact that cases involving boiler room frauds can be found where courts imposed civil penalties that were lower[5] and higher[6] than the defendant's pecuniary gain. The Default Defendants suggest I exercise my discretion and impose a total penalty of $110,000 against them. [Dkt. 562 at 5]. In *SEC v. Tucumseh Holdings Corp.*, 2011 WL 2076466

---

[5] *See SEC v. Wolfson*, 539 F.3d 1249, 1255 (10th Cir. 2008) (noting district court imposed $100,000 civil penalty on approximately $170,000 of disgorgement); *SEC v. Tecumseh Holdings Corp.*, 2011 WL 2076466, at *2-3 and n.35 (S.D.N.Y. 2011) (imposing "statutorily-prescribed" third-tier and first-tier penalties of $100,000 and $6,500, respectively, "as opposed to the gross amount of pecuniary gain" because SEC did not present evidence of total amount each defendant received and because court "held them jointly and several liable for the entire amount [$7,200,000] of…ill-gotten gains").

[6] *See SEC v. Rabinovich & Assocs.*, 2008 WL 4937360, at *6 (S.D.N.Y. 2008) (in boiler room fraud, imposing $130,000 civil penalty in addition to $92,857.49 in disgorgement, not including interest).

(S.D.N.Y, 2011) the district judge concluded that the maximum statutory fine against each of the defendants sufficed to punish them and deter future violations. [Dkt. No. 562 at 4-5]. And in *Spencer Pharm. Inc.*, the court found "appropriate" a total civil penalty of $750,000 where the facts deemed admitted showed that the defendant orchestrated "a complex and long-lasting fraud to manipulate the stock price of Spencer [Pharmacy]," which resulted in more than $5 million profit. *Id.* at 7-8.

The wide variations in the amount of civil penalties imposed in seemingly similar cases is inevitable in a regime that invests district judges with substantial discretion in assessing civil penalties. "The term 'discretion' denotes the absence of a hard and fast rule." *Langnes v. Green,* 282 U.S. 531, 541(1931); *The Styria v. Morgan,* 186 U.S. 1, 9 (1902));*United States v. Criden,* 648 F.2d 814, 817 (3rd Cir. 1981)("discretion of the trial court ... means merely that the decision is uncontrolled by fixed principles or rules of law."). Under this standard, a court must act "with regard to what is right and equitable under the circumstances and the law, and directed by the reason and conscience of the judge to a just result." *Langnes,* 282 U.S. at 541. And that requires that the judge possess "the flexibility necessary to fit the decision to the individualized circumstances." *E.E.O.C. v. University of Pennsylvania,* 850 F.2d 969, 977 (3rd Cir. 1988), *aff'd.*, 493 U.S. 182 (1990).

"'The very exercise of discretion means that persons exercising discretion may reach different results from exact duplicates. Assuming each result is within the range of discretion, all are correct in the eyes of the law. It would not make sense for the system to require the exercise of discretion in order to be facially constitutional, and at the same time hold a system unconstitutional in application where that discretion achieved different results for what appear to be exact duplicates, absent the state showing the reasons for the difference...." *McCleskey v. Kemp*, 753 F.2d 877, 891 (5th Cir. 1985), *aff'd, McCleskey v. Kemp*, 481 U.S. 279, 289-290 (1987). *See also Mejia v. Cook*

6

*County, Ill.,* 650 F.3d 631, 635 (7th Cir.2011); *United States v. Banks,* 546 F.3d 507, 508 (7th Cir.2008).

Under the circumstances, the appropriate amount of a civil penalty lies between the $3,000,000 sought by the SEC and the $110,000 recommended by the Default Defendants. Given the circumstances, a civil penalty of $400,000 will be assessed against Mr. von Hase and CTA Worldwide. Like the district court in *Tecumseh Holdings*, I conclude that given the amounts previously assessed against the Default Defendants, a civil penalty in the millions of dollars is unwarranted and unnecessary. The amount assessed "will suffice to assure that there will be no repetition of the kind of conduct involved in this case." 2011 WL 2011 WL 2076466 at *3.

**ENTERED:** _____
UNITED STATES MAGISTRATE JUDGE

**DATE:** 2/10/16