# ATTACHMENT A

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

_____
                                                    :
**SECURITIES AND EXCHANGE COMMISSION,**              :
                                                    :
        **Plaintiff,**                               :
                                                    :
                v.                                   :
                                                    :
**STEFAN H. BENGER, SHB CAPITAL, INC.,**             :
**INTERNATIONAL CAPITAL FINANCIAL**                  :   **CASE NO. 09-CV-676**
**RESOURCES, LLC, PHILIP T. POWERS,**                :
**HANDLER, THAYER & DUGGAN, LLC,**                   :   Magistrate Judge Cole
**FRANK I. REINSCHREIBER, GLOBAL**                   :
**FINANCIAL MANAGEMENT, LLC,**                       :
**CTA WORLDWIDE SERVICES, SA, and**                  :
**STEPHAN VON HASE,**                                :
                                                    :
        **Defendants.**                              :
_____:

## DISTRIBUTION PLAN

### I.    Introduction

1.      On February 3, 2009, the U.S. Securities and Exchange Commission ("SEC" or

"Commission") filed an emergency law enforcement action in federal court (the "Complaint")

against Stefan H. Benger, Jason B. Meyers, SHB Capital, Inc., International Capital Financial

Resources, LLC, CTA Worldwide Services, SA and Stephan Von Hase (collectively, the

"Distribution Agent Defendants") and Philip T. Powers, Handler, Thayer & Duggan, LLC, Frank

I. Reinschreiber and Global Financial Management, LLC (collectively, the "Escrow Agent

Defendants," and together with the Distribution Agent Defendants, the "Defendants").  The

action alleged that the Defendants engaged in an ongoing boiler room scheme run from their

residences and offices in Chicago.  From at least March 2007 through February 2009, that

scheme raised approximately $44.2 million from more than 1,400 foreign investors, primarily through the sale of U.S. penny stocks.

2.      The Distribution Agent Defendants entered into distribution agreements with companies that issue shares of "Regulation S stock," which is stock that is exempt from registration with the Commission because it is offered solely to investors who are located outside the United States.   In these agreements, the Distribution Agent Defendants agreed to solicit investors for such stock in exchange for sales commissions that exceed 60%.  The Distribution Agent Defendants then retained overseas boiler room operators to sell the inventory of such stock through phone solicitations.  The boiler room sales agents preyed upon less sophisticated foreign investors – including elderly Europeans.  In their cold calls, the sales agents employed high pressure sales tactics and myriad misrepresentations.

3.      After individuals agreed to invest in the boiler room stock, they received a share purchase agreement ("SPA") documenting their purchase with instructions on where to fax their signed SPA, and wiring instruction for their investment funds.  In most instances, investors sent their investment funds and signed SPAs to the Escrow Agent Defendants.  The Escrow Agent Defendants then disbursed more than 60% of the investor proceeds to the parties who received sales commissions -- including the boiler room sales agents -- with less than 40% going to the issuers of the stocks.  The Escrow Agent Defendants disbursed to foreign accounts nearly $29 million of the $44.2 million raised from investors in the boiler room scheme. After dividing up the investor proceeds in this manner, the Escrow Agent Defendants often sent share certificates to investors.

4.      Throughout the sales process, investors were deceived about the sales commissions. The boiler room agents oftentimes lied outright about their exorbitant commissions to

prospective investors, falsely claiming that the agent will only make money on the investment if the investor makes money on the investment. The SPAs provided to investors misrepresented that investors paid no sales commissions. The SPAs created the misimpression that the investor's entire investment amount went to the stock issuer, with the investor paying nominal "transaction fees" amounting to 1% or less of the amount invested.

5.      This scheme involved the offer and sale of stock in at least eight penny stock issuers: China Voice Holding Corp., Integrated Biodiesel Industries Ltd., Biomoda, Inc., Pharma Holdings Inc., World Energy Solutions, Inc., Revolutions Medical Corp., Earthsearch Communications, Inc., and Essential Innovations Technology Corp. (together the "Issuers"). All but one of these companies were based in the United States. With the exception of Integrated Biodiesel and Pharma, the stock for each of the Issuers was quoted through the OTC Bulletin Board or "Pink Sheets." At the time of filing the Complaint, the stocks of Integrated Biodiesel and Pharma were not yet listed on any stock exchange or quoted through a service like the OTC Bulletin Board.[1] The stock of most if not all of the Issuers traded at prices under $5 per share and otherwise met the definition of a "penny stock" under the federal securities laws.

6.      CTA Worldwide Services, SA ("CTA") and Stephen Von Hase ("von Hase") each received a significant sum of investor proceeds through payment made by the Escrow Agent Defendants. These investor proceeds represent undisclosed sales commissions from the boiler room scheme. Neither CTA Worldwide Services, SA or Stephen Von Hase had any legitimate claim to the funds that they received, nor did they provide any services to justify the receipt of such funds.

---

[1]      Integrated Biodiesel Industries Ltd. was subsequently dismissed from the litigation and is not included in the Eligible Securities (as defined below) for this matter.

7.    On April 1, 2010, a final judgment was entered against Defendant Handler, Thayer & Duggan LLC ("Handler") finding that it was liable for disgorgement in the amount of $196,912.45, representing profits gained as a result of the conduct alleged in the Complaint, together with prejudgment interest thereon in the amount of $16,447.18 and a civil penalty in the amount of $25,000.00 pursuant to section 21(d)(3) of the Securities Exchange Act of 1934 (the "Exchange Act").

8.    Also on April 1, 2010, the SEC filed an Amended Complaint (the "Amended Complaint") against all remaining Distribution Agent Defendants and Escrow Agent Defendants, and CTA Worldwide Services, SA and Stephen Von Hase, consolidating them into one defendant group.

9.    On December 20, 2011, the SEC filed its Second Amended Complaint.

10.    On January 15, 2013, a corrected final judgment was entered against Stefan H. Benger ("Benger") and SHB Capital, Inc. ("SHB") permanently restraining them from further engaging in the fraudulent actions alleged in the Second Amended Complaint. It also found them liable for disgorgement in the amount of $422,004.10, representing profits gained as a result of the conduct alleged in the Second Amended Complaint, together with prejudgment interest thereon in the amount of $26,869.79, and a civil penalty in the amount of $250,000.00 pursuant to section 20(d) of the Securities Act of 1933 (the "Securities Act") and section 21(d)(3) of the Exchange Act.

11.    On January 23, 2014, the SEC moved for default judgments, based upon its Second Amended Complaint, against defendants von Hase, CTA, and International Capital Financial Resources, LLC ("ICFR"), and moved to dismiss all claims against defendant Jason B. Meyers, who died subsequent to the filing of this lawsuit.

12.     On January 28, 2014, the Court entered a final judgment against ICFR ordering Bank of America, options Xpress, and Apex Clearing to liquidate and transfer ICFR's holdings in certain of their accounts.

13.     On January 29, 2014, the SEC filed a Third Amended Complaint to supersede the Second Amended Complaint with respect to Philip T. Powers ("Powers"), Frank I. Reinschreiber ("Reinschreiber"), and Global Financial Management ("Global Financial").

14.     On April 9, 2014, an amended final judgment was entered against Powers permanently restraining him from further engaging in actions alleged in the Third Amended Complaint, and also finding him liable for disgorgement in the amount of $77,560.13, representing profits gained as a result of the conduct alleged in the Third Amended Complaint, prejudgment interest thereon in the amount of $4,698.52, and ordering a civil penalty in the amount of $25,000.00 pursuant to section 21(d)(3) of the Exchange Act.

15.     Also on April 9, 2014, the Court entered an Amended Final Judgment as to Reinschreiber and Global Financial permanently restraining them from further engaging in actions alleged in the Third Amended Complaint, and also finding them jointly and severally liable for disgorgement in the amount of $78,348.00, representing profits gained as a result of the conduct alleged in the Third Amended Complaint, prejudgment interest thereon in the amount of $1,623.00, and ordering a civil penalty in the amount of $25,000.00 pursuant to section 21(d)(3) of the Exchange Act.

16.     By Order dated September 3, 2015, the Court created a Fair Fund pursuant to Section 308(a) of Sarbanes-Oxley, as amended, to return funds to injured investors. The Court appointed Kurtzman Carson Consultants, LLC ("KCC") to serve as the distribution agent ("Distribution Agent") to oversee all aspects of the administration and distribution of the Fair

Fund in accordance with the terms of a distribution plan to be approved by the Court, and in coordination with the Commission staff.

17.     On February 22, 2016, a final judgment and injunction was entered against Stephan von Hase and CTA that, among other things, restrained them from further engaging in actions alleged in the Third Amended Complaint, and held them jointly and severally liable for disgorgement in the amount of $3,031,999.45, representing profits gained as a result of the conduct alleged in the Second Amended Complaint; prejudgment interest thereon in the amount of $759,151.46; and ordering a civil penalty in the amount of $400,000.00 pursuant to section 20(d) of the Securities Act and section 21(d)(3) of the Exchange Act.  These amounts remain due and owing.

18.     With the exception of von Hase and CTA, the disgorgements pursuant to the final judgments against the Defendants (collectively the "Final Judgments") were paid to the Commission and are currently invested at the Bureau of the Fiscal Service ("BFS") at the United States Department of the Treasury. Any investment fees of the BFS will be paid by the Fair Fund.

19.     This Distribution Plan was developed jointly by the Distribution Agent and the Commission staff in accordance with practices and procedures customary in Fair Fund administrations.  This Distribution Plan governs the administration and distribution of the Fair Fund, and sets forth the method and procedures for distributing the assets of the Fair Fund to certain investors in the Issuers harmed by the misconduct.

**II.** **Definitions**

20.     As used in this Distribution Plan, the following definitions shall apply:

a. "**Check-cashing Period**" means the ninety (90) days following the mailing of Distribution Payment checks to Eligible Claimants in accordance with this Distribution Plan.

b. "**Claim Deficiency Notice**" means the notice sent by the Distribution Agent to a Potential Claimant whose claim is deficient in one or more ways (e.g., failure to provide required information or documentation). The Claim Deficiency Notice shall advise the Potential Claimant of the reason(s) for the deficiency and the opportunity to cure such deficiency. Subject to certain extensions provided for in this Plan, the deadline to cure deficiencies shall be twenty (20) days from the date of the Claim Deficiency Notice.

c. "**Days**" means calendar days, unless otherwise specified herein.

d. "**Distribution Agent**" refers to KCC (collectively with all employees, agents, consultants, or independent contractors of such firm), which has been appointed by the Court to administer and distribute the Fair Fund in accordance with the terms of this Distribution Plan and the Court's orders.

e. "**Distribution *De Minimis* Amount**" shall mean the minimum preliminary calculation amount of $10.00. No Eligible Claimant shall receive a distribution payment unless the preliminary calculation is equal to or greater than $10.00.

f. "**Distribution Payment**" means the payment to an Eligible Claimant in accordance with the terms of this Distribution Plan.

g. "**Distribution Plan**" means this Distribution Plan in the form approved by the Court.

h.  "**Eligible Claimant**" means a Potential Claimant (other than Excluded Parties) who suffered a loss as a result of purchase transactions in Eligible Securities during the Relevant Period and who is determined by the Distribution Agent to be eligible for a Distribution Payment from the Fair Fund.

i.  "**Eligible Loss Amount**" is the amount of loss an Eligible Claimant incurred through the investment in Eligible Securities during the Relevant Period calculated in accordance with the Plan of Allocation.

j.  "**Eligible Securities**" refers to the common stock of the Issuers purchased outside of the United States from the Defendants.  Transactions during the Relevant Period that are pursuant to, or in connection with, a swap, an option, or other derivative will not be eligible for a recovery.

k.  "**Excluded Parties**" shall mean Defendants and all other entities or individuals who (a) are or have at any time been a parent, subsidiary, affiliate, partner, or member of Defendants; (b) exercised control of or were controlled by the Defendants; (c) during the Relevant Period to the present, were employed by, or served as officers or directors, or were members of the Defendants or other entity that is deemed to be an Excluded Party pursuant to parts (a) and (b) hereof.  The Proof of Claim Form will require all Potential Claimants to certify that that they are not an Excluded Party.

l.  "**Fair Fund**" refers to the $1.3 million fund created by the Court pursuant to the provisions of Sarbanes-Oxley, as amended, and pursuant to the Final Judgments for the benefit of investors harmed by the Defendants' misconduct

described in the complaints, plus any accumulated interest or earnings thereon or any additions thereto as may be provided by future Court order or agreement in related cases or otherwise.

m.  "**Fair Fund Notice**" means a written notice from the Distribution Agent to Potential Claimants informing them of the Fair Fund and its eligibility requirements, and explaining how to submit a Proof of Claim Form.  The Fair Fund Notice will be both mailed and published according to the schedule detailed herein.

n.  "**Filing Deadline**" means the date established in accordance with this Distribution Plan by which Proof of Claim Forms must be postmarked or submitted electronically in order to receive consideration under the Distribution Plan.   Subject to certain extensions provided for in this Distribution Plan, the Filing Deadline will be one hundred and twenty (120) days following the entry by this Court of an Order approving the Distribution Plan.

o.  "**Issuers**" means China Voice Holding Corp., Biomoda, Inc., Pharma Holdings Inc., World Energy Solutions, Inc., Revolutions Medical Corp., Earthsearch Communications, Inc., and Essential Innovations Technology Corp.

p.  "**Net Available Fair Fund**" means the Fair Fund, less any amounts expended for tax obligations, fees, and expenses of the Distribution Agent and Tax Administrator, and BFS fees in accordance with this Distribution Plan.

q.   "**Notice Packet**" means the materials relevant to submitting a claim that may be provided to Potential Claimants known to the Distribution Agent or to those who obtain such materials through a website or other appropriate delivery mechanisms. These materials will include a copy of the Fair Fund Notice and a Proof of Claim Form (together with instructions for completion of the Proof of Claim Form).

r.   "**Notice of Publication**" means the publication of the Fair Fund Notice, or a notice closely resembling the Fair Fund Notice, in *The Wall Street Journal Europe Edition*, *The Financial Times Worldwide Edition*, *The Wall Street Journal Europe* banner ads, *PR Newswire Europe*, and *Bloomberg* in a manner deemed appropriate by the Distribution Agent and not unacceptable to the Commission staff.  Such notice (the text of which shall be approved by the Commission staff) shall include, at a minimum, a statement that the Fair Fund relates to purchases of Eligible Securities during the Relevant Period and the means of obtaining a Notice Packet.

s.   "**Person**" means natural individuals as well as legal entities including, but not limited to, corporations, partnerships, limited liability companies, and governmental entities.

t.   "**Plan of Allocation**" means the methodology by which a Potential Claimant's Eligible Loss Amount is calculated.  The Plan of Allocation is set forth in Appendix I attached hereto.

u.   "**Potential Claimants**" means those Persons, or their lawful successors, identified by the Distribution Agent as having possible claims to recover from

the Net Available Fair Fund under this Distribution Plan, or Persons asserting that they have possible claims to recover from the Net Available Fair Fund under this Distribution Plan.

v.  "**Proof of Claim Form**" means the form designed by the Distribution Agent for the filing of claims in accordance with the terms of this Distribution Plan. The Proof of Claim Form will require, at a minimum, sufficient documentation reflecting any Potential Claimant's purchases and dispositions of Eligible Securities during the Relevant Period.

w.  "**Rejection Notice**" shall mean the notice sent by the Distribution Agent to a Potentially Eligible Claimant stating the Distribution Agent's determination that the Eligible Claimant's claim is not eligible to receive any distribution.

x.  "**Relevant Period**" for the purposes of this Distribution Plan means the period of time commencing on March 1, 2007 and continuing until February 28, 2009, inclusive.

y.  "**Request for Reconsideration Deadline**" shall mean the date established in accordance with this Distribution Plan by which a Potential Claimant's dispute of a Rejection Notice must be filed to challenge the Rejection Notice. Subject to certain extensions provided for in this Distribution Plan, the deadline to file such requests shall be twenty (20) days from the date of Rejection Notice.

z.  "**Tax Administrator**" means Damasco & Associates, LLP, the firm appointed by the Court on April 27, 2010 as the Tax Administrator in this action.

## III.  Administration of the Fair Fund

### A.  <u>Identification of and Notice to Potential Claimants</u>

21.  The Distribution Agent will, insofar as is practicable, use its best efforts to identify Potential Claimants from a review of trading records and account information provided by the transfer agents for the Issuers, registered broker-dealers, market makers, investment advisors and other sources.  The Distribution Agent will coordinate with Commission staff to send document requests to any of the aforementioned entities to identify investors who purchased Eligible Securities during the Relevant Period.

22.  In order to ensure a timely mailing to Potential Claimants, the transfer agent or any other entity described in paragraph 21 shall deliver the requested documents to the Distribution Agent no later than fifteen (15) days from the date the document request is received.

23.  The Distribution Agent will create a mailing database consisting of the records provided by the Issuers' transfer agents or other entities described in paragraph 21, provided by the SEC, or otherwise obtained by the Distribution Agent.

24.  The Distribution Agent will design and submit a Notice Packet, including a Fair Fund Notice and a Proof of Claim Form, to the Commission staff for review and approval.

25.  The Distribution Agent will commence mailing the Fair Fund Notice to all Potential Claimants as requested no later than thirty (30) days following the entry by this Court of an Order approving the Distribution Plan.  Each Fair Fund Notice will notify the Potential Claimant of the Fair Fund, contain a brief description of the eligibility requirements, generally describe the Fair Fund's claim and distribution processes, explain how to obtain a copy of the approved Distribution Plan and Proof of Claim Form by request or from the Fair Fund website, and provide instructions for submitting a claim.

26.     The Distribution Agent will mail notices to any institutions identified during the outreach process ("record holders") that may have records of holders of Eligible Securities during the Relevant Period.

27.     Notice Packets will be available on the Fair Fund website to brokerages and other institutions that hold Eligible Securities in "street name" for the benefit of their customers who are the beneficial owners of the securities.  The Distribution Agent will promptly provide a Notice Packet to any Potential Claimant upon request.  Additionally, the Distribution Agent shall continue to supply the Notice Packet to Potential Claimants who contact the Distribution Agent requesting a copy via mail, phone, or e-mail.

28.     The Distribution Agent will also cause the Notice Packet to be published by the Depository Trust Company ("DTC") on the DTC Legal Notice System ("LENS").  LENS enables the participating bank and broker nominees to review the Notice Packet and contact the Distribution Agent for copies of the Notice Packet for their beneficial holders.

29.     Within thirty (30) days following the entry by this Court of an Order approving this Distribution Plan, the Distribution Agent will carry out the Notice Publication, which will notify the public of the Fair Fund, contain a brief description of the eligibility requirements, generally describe the Fair Fund's claim and distribution processes, explain how to obtain a copy of the approved Distribution Plan and Proof of Claim Form by request or from the Fair Fund website, and provide instructions for submitting a claim.

30.     The Distribution Agent will establish and maintain a website devoted solely to the Fair Fund. The Fair Fund website, located at www.BengerFairFund.com, will make available a copy of the Fair Fund Notice, the approved Distribution Plan, copies of other relevant court documents, and will provide information regarding the claims process and eligibility

requirements for participation in the Fair Fund. The website will also include a copy of the Proof of Claim Form and related materials in downloadable form, and such other information covering process or substance that the Distribution Agent believes will be beneficial to Potential Claimants. The Commission staff retains the right to review and approve any material posted on the Fair Fund website.

31. The Distribution Agent will establish and maintain a toll-free telephone number for Potential Claimants to call to speak to a live representative of the Distribution Agent during its regular business hours, 9:00 a.m. to 8:00 p.m., Eastern Standard Time, or, outside of such hours, to hear prerecorded information about the Fair Fund. The Distribution Agent will advise the Commission staff of the toll-free telephone number. The Distribution Agent will also establish and maintain a traditional mailing address and an email address to enable Potential Claimants to correspond with the Distribution Agent.

32. The Distribution Agent will attempt to locate any Potential Claimant whose mailing is returned as "undeliverable." The Distribution Agent will utilize all means reasonably available to obtain updated addresses in response to undeliverable notices, and forward any returned mail for which an updated address is provided or obtained. Additionally, the Distribution Agent may engage a third-party search firm to conduct more rigorous searches for missing Potential Claimants. Additional efforts to identify new addresses for returned undelivered mail will be conducted as necessary and economically reasonable after consultation with the staff of the Commission.

**B.** **Claims Process**

33. The Filing Deadline will be clearly identified in all materials as the first business date following the calendar date one hundred and twenty (120) days following the entry by this

Court of an Order approving this Distribution Plan. To avoid being barred from asserting a claim, each Potential Claimant must submit to the Distribution Agent a properly completed Proof of Claim Form reflecting such Potential Claimant's claim, together with all required supporting documentation, postmarked on or before the Filing Deadline. A Proof of Claim Form that is postmarked after the Filing Deadline will be marked as "late" and only accepted if, after consulting with the Commission staff, the processing of these claims will not delay the distribution process, unless the deadline is extended by the Distribution Agent after consultation with Commission Staff. Any extension will be published on the Fair Fund website.

34. The burden to ensure the Proof of Claim Form is properly and timely postmarked and to prove receipt of the claim by the Distribution Agent will be upon the Potential Claimant; therefore Potential Claimants will be instructed to submit their claims in a manner that will enable them to prove receipt of the claim by the Distribution Agent.

35. Proof of Claim Forms must be properly filled out per the instructions provided by the Distribution Agent, and must be accompanied by such documentary evidence as the Distribution Agent deems necessary or appropriate to substantiate the claim. Without limitation, this information may include third party documentary evidence of purchases and dispositions of Eligible Securities during the Relevant Period, as well as holdings of Eligible Securities at pertinent dates. The Distribution Agent will review all claim submissions and determine the eligibility of each Potential Claimant to participate in the Fair Fund by reviewing the claim data and supporting documentation (or the lack thereof), verifying the claim, and calculating each Potential Claimant's Eligible Loss Amount pursuant to the Plan of Allocation. Each Potential Claimant will have the burden of proof to establish the validity and amount of his or her claim, and that he or she qualifies as an Eligible Claimant. The Distribution Agent will have the right

to request, and the Potential Claimant will have the burden of providing to the Distribution Agent, any additional information and/or documentation deemed relevant by the Distribution Agent.

**C.**    **Deficiency and Claim Determination Processes**

36.    The Distribution Agent will provide a Claim Deficiency Notice to each Potential Claimant who has filed a Proof of Claim Form with the Distribution Agent that is deficient in whole or in part, setting forth the Distribution Agent's conclusions concerning such claim.

37.    The Claim Deficiency Notice will provide to each Potential Claimant whose claim is deficient, in whole or in part, the reason(s) for the deficiency (e.g., failure to provide required information or documentation).  The Claim Deficiency Notice will also notify the Potential Claimant of the opportunity to cure such deficiency, and provide instructions regarding what is required to do so.  Any Potential Claimant with a deficient claim will have twenty (20) days from the date of the Claim Deficiency Notice to cure any deficiencies identified in the Claim Deficiency Notice.

38.    In the event the claim is denied, in whole or in part, the Rejection Notice will state the reason for such denial.  Any Potential Claimant seeking reconsideration of a rejected claim must advise the Distribution Agent in writing within twenty (20) days of the date of the Rejection Notice.  All requests for reconsideration must include the necessary documentation to substantiate the basis upon which the Potential Claimant is requesting reconsideration of their claim.

39.    The Distribution Agent may consider requests for review of any claim determination presented by Potential Claimants.  Potential Claimants who request review must provide a reason for the request and documents supporting their claim.  The Distribution Agent

will investigate the request for review, and within thirty (30) days of receipt of the written request, the Distribution Agent will notify the Potential Claimant of the final resolution of the review. The Distribution Agent will notify the Commission of any request for review that does not result in the resolution of the claim. The Distribution Agent will have the authority to waive technical claim deficiencies and approve claims on a case-by-case basis, or in groups of claims. All determinations made by the Distribution Agent in accordance with the Distribution Plan in any dispute, request for review, or request to cure a deficient claim will be final and not subject to appeal.

40.    The Potential Claimant has the burden of notifying the Distribution Agent of a change in his or her current address and other contact information, and of ensuring that such information is properly reflected in the Distribution Agent's records.

41.    Claims on behalf of a retirement plan covered by Section 3(3) of ERISA, 29 U.S.C. §1002(3), which do not include individual retirement accounts, and such plan's participants, are properly made by the administrator, custodian, or fiduciary of the plan and not by the plan's participants. The Distribution Agent will issue any payments on such claims directly to the administrator, custodian, or fiduciary of the retirement plan. The custodian or fiduciary of the retirement plan will distribute any payments received in a manner consistent with its fiduciary duties and the governing account, or plan provisions. With respect to any retirement plan that has been closed prior to the Distribution Agent's identification of Potential Claimants, the Distribution Agent will endeavor to distribute funds directly to the beneficial accountholders of such retirement plans if the information required for such a distribution is known to or provided to the Distribution Agent.

## IV.   <u>Third-Party Review</u>

42.    After the Distribution Agent has completed the process of analyzing the claims and determining claim amounts in accordance with this Distribution Plan, and prior to the distribution of any funds, the Distribution Agent will engage an independent, third-party firm, not unacceptable to Commission staff, to perform a set of agreed upon procedures, review a statistically significant sample of claims, and ensure accurate and comprehensive application of the Plan of Allocation. The Distribution Agent will communicate the results of the review to Commission staff together with any written analysis or reports related to the review, and, upon request, will make the firm available to the Commission staff to respond to questions concerning the review.

## V.    <u>Establishment of the Escrow Account</u>

43.    Upon receipt of the monies from the CRIS account in this matter, the Distribution Agent shall sign a receipt acknowledging the receipt of the funds and deposit these monies in a bank account as described below:

        a.    The bank account will be maintained at Huntington Bank (the "Bank").

        b.    The Distribution Agent shall then file the signed receipt with the Court and supply a copy of the receipt to counsel for the Commission in this matter within ten (10) business days of receipt of the monies.

        c.    Pursuant to an escrow agreement (the "Escrow Agreement") to be provided by the staff of the Commission, the Distribution Agent and the Bank shall establish an escrow account in the name of and bearing the Employer Identification Number ("EIN") of the QSF, as custodian for the distributees of the Distribution Plan. The name of each account shall be in

the following form: "SEC v. Benger" as custodian for the benefit of investors allocated a distribution from the Distribution Plan in SEC v Benger (the "Fair Fund Escrow Account" or "Escrow Account"). The Distribution Agent and the Bank shall also establish a separate deposit account (e.g. controlled distribution account, managed distribution account, linking checking and investment account) (the "Distribution Account") titled as set forth above for the purpose of funding checks to be distributed to investors by the Distribution Agent pursuant to the Distribution Plan.

d.    All funds shall remain in the Escrow Account, separate from bank assets, pursuant to the Escrow Agreement until needed to satisfy a presented check. Presented checks will be subject to "positive pay" controls before they are honored by the bank, at which time funds will be transferred from the Escrow Account to the Distribution Account to pay the approved checks.

e.    During the term of the Escrow Agreement, if invested, the Fair Fund Escrow Account shall be invested and reinvested in short-term U.S. Treasury securities backed by the full faith and credit of the United States Government or an agency thereof ("U.S. Government"), of a type and term necessary to meet the cash liquidity requirements for payments to Eligible Claimants, tax obligations and/or fees and expenses of the Tax Administrator and Distribution Agent, including investment or reinvestment in a bank account insured by the Federal Deposit Insurance

Corporation ("FDIC") up to the guaranteed FDIC limit, or in AAA-rated Money Market Mutual Funds registered under the Investment Company Act of 1940 that directly invest in short term U.S. Treasury securities and obligations, all backed by the full faith and credit of the U.S. Government; provided, however, that the AAA-rated Money Market Mutual Funds' investments in short term U.S. Treasury securities will not be made through repurchase agreements or other derivative products.

f.      The Distribution Agent shall provide duplicate original bank and/or investment statements on any accounts established by the Distribution Agent to the Tax Administrator on a monthly basis and shall assist the Tax Administrator in obtaining mid-cycle statements, as necessary.

g.      In consultation with Commission staff, the Distribution Agent shall work with the Bank on an ongoing basis to determine an allocation of funds between the escrow and the deposit accounts that will preserve earnings, if possible, without compromising safety and soundness by providing maximum protection for the Fair Fund under the full faith and credit of the U.S. Government and/or the maximum available FDIC deposit insurance and pass-through deposit insurance.

## VI.   <u>Distribution</u>

44.     The Net Available Fair Fund will be distributed to Eligible Claimants as provided under the terms of this Distribution Plan.  An Eligible Claimant's Eligible Loss Amount, as determined in accordance with the Plan of Allocation contained in Appendix I to this Distribution Plan, will be used to determine the amount of their Distribution Payment.

45.     The Distribution Agent will disburse the Net Available Fair Fund to all Eligible Claimants, in one or more tranches, once all Proof of Claim Forms have been processed and all Potential Claimants whose claims have been rejected or disallowed, in whole or in part, have been notified and provided the opportunity to cure pursuant to the procedures set forth herein.

46.     Within forty-five (45) days following the expiration date of the last Claim Deficiency Notice and/or Rejection Notice, the Distribution Agent will provide the Commission with preliminary recommendations on Eligible Loss Amounts.  The Distribution Agent will also prepare a sources and uses that includes an estimated distributable amount from the Net Available Fair Fund.   The Distribution Agent will retain a prudent reserve to pay any federal, state, or local taxes payable in connection with the Fair Fund and any estimated fees and expenses necessary for the Distribution Agent to execute the Distribution.

47.     Upon approval of the above recommendations, the Distribution Agent will prepare a list of all Eligible Claimants, the Eligible Loss Amounts, and the Distribution Payment of each Eligible Claimant ("Payment File").  The Distribution Agent will also prepare an Affidavit to accompany the Commission's motion to approve the Distribution.  In conjunction with any motion seeking approval of a Distribution, the Payment File will, upon request, be made available to the Court under seal.

48.     Upon entry of an Order approving the Distribution motion, the Distribution Agent shall, as promptly as possible, disburse the entire balance of the Net Fair Fund to Eligible Claimants pursuant to the Distribution Plan.

49.     Should the total amount of the Eligible Loss Amounts of all Eligible Claimants exceed the Net Fair Fund, the Distribution Agent will distribute funds to the Eligible Claimants based upon a *pro rata* distribution formula.  This formula will be the fraction of the Eligible Loss

Amount of each Eligible Claimant divided by the aggregate Eligible Loss Amounts of all Eligible Claimants. No Distribution Payment will be made to an otherwise Eligible Claimant unless the amount to be paid equals or exceeds the Distribution *De Minimis* Amount.

50.     The Distribution Agent, in its exclusive discretion may, but will have no obligation to, aggregate accounts held by a person in the same legal capacity in determining Eligible Loss Amounts and Distribution Payment amounts.

51.     Payments will be issued by the Distribution Agent from the Distribution Account set up at the Bank. Eligible Claimants will have the option to select whether payments are made in U.S. currency or in the currency of the country where the Eligible Claimant is located. Checks will bear a stale date of ninety (90) days from the date of issuance. Accordingly, checks that are not negotiated within this Check-cashing Period will be voided, and the issuing financial institution will be instructed to stop payment on those checks, except as provided below. Where an Eligible Claimant's check is not negotiated within the Check-cashing Period and has been voided by the Distribution Agent, that Eligible Claimant's claim will be extinguished. All such funds will remain in the Fair Fund.

52.     Payments to Eligible Claimants will be accompanied by a communication that includes, as appropriate:

> a.     A statement characterizing the distribution;
>
> b.     A statement that checks will be void and cannot be reissued after ninety (90) days from the date the original check was issued;
>
> c.     A statement that reissued checks will expire thirty (30) days from the date of the reissued check;

   d.  A statement that the tax treatment of the distribution is the responsibility of each Eligible Claimant and that the Eligible Claimant should consult his or her tax advisor for advice regarding the tax treatment of the distribution; and

   e.  Contact information for the Distribution Agent for questions regarding the Distribution Payment.

53. Distribution checks and/or accompanying communications will clearly indicate that the money is being distributed from a Fair Fund established to compensate investors for harm suffered as a result of their investment in the Eligible Securities. Any such communication, letter, or other mailing to Eligible Claimants characterizing the distribution will be submitted to the Commission staff and the Tax Administrator for review and approval.

54. Wire transfers may be utilized at the discretion of the Distribution Agent to transfer approved Distribution Payments to filers. Wire transfers will be initiated by the Distribution Agent using a two-party check and balance system, whereby completion of a wire transfer will require an authorization by two members of the Distribution Agent's senior staff. Wire transfers will be executed in the Eligible Claimants selected currency, unless agreed to with the Commission staff.

55. Under no circumstances will the Distribution Agent, its employees, or its agents incur any liability to any Person for making a distribution in accordance with the Order of the Court approving the distribution and the schedules of Eligible Claimants, and all Persons shall be enjoined from taking any action in contravention of this provision. Upon receipt and acceptance by an Eligible Claimant of a distribution from the Fair Fund, such Eligible Claimant will be deemed to have released all claims that such Eligible Claimant may have against the Distribution

Agent, its employees, agents, and attorneys in connection with the Distribution Plan and the administration of the Fair Fund, and shall be barred from prosecuting or asserting any such claims.

## VII.  Post Distribution

### A.        Handling of Returned or Un-cashed Checks

56.     The Distribution Agent is authorized to reissue checks to Eligible Claimants upon the receipt of a valid, written request from the Eligible Claimant.  Such reissued checks will be void at thirty (30) days from the reissuance.

57.     The Distribution Agent will research and attempt to locate all Eligible Claimants whose checks are returned to the Distribution Agent as undeliverable.  However, the Eligible Claimant has the burden of providing the Distribution Agent with any changes to his or her mailing address.  The Distribution Agent will mail a reissued check to the updated address, subject to the time limits detailed herein.

58.     In cases where an Eligible Claimant is unable to endorse a Distribution Payment (e.g., as the result of a name change because of marriage or divorce, or as the result of death), any request by an Eligible Claimant or a lawful representative for reissuance of a Distribution Payment in a different name must be documented to the satisfaction of the Distribution Agent.  If such change is properly documented in the sole discretion of the Distribution Agent, the Distribution Agent will issue an appropriately redrawn Distribution Payment, subject to the time limits detailed herein.

59.     The Distribution Agent will make reasonable efforts to contact Eligible Claimants to follow up on the status of un-cashed Distribution Payments per thresholds agreed to with the Commission staff  (other than those returned as "undeliverable") and take appropriate action to

follow up on the status of un-cashed checks at the request of Commission staff. The Distribution Agent may reissue such checks, subject to the time limits detailed herein.

**B.      Disposition of Remaining Funds**

60.      If, after the distribution is complete, all tax obligations of the Fair Fund have been satisfied, and funds remain in the Fair Fund, the Commission staff, in consultation with the Distribution Agent, will return, via wire, the remaining funds to the Commission for transfer to the United States Treasury.

**VIII. The Distribution Agent**

61.      The Distribution Agent will be responsible for administering the Fair Fund in accordance with the Distribution Plan. This will include, among other things, taking reasonable steps to identify and contact Potential Claimants; obtaining accurate mailing information for Potential Claimants; establishing a website and staffing a call center to address inquiries during the claims process; developing a claims database; preparing accountings; cooperating with the Tax Administrator to satisfy any tax liabilities and to ensure compliance with income tax reporting requirements; advising Potential Claimants of deficiencies in claims and providing an opportunity to cure any documentary defects; taking antifraud measures, such as identifying false, ineligible, and overstated claims; making determinations under the criteria established herein as to Potential Claimant eligibility; advising Potential Claimants of final claim determinations; and disbursing the Fair Fund in accordance with this Distribution Plan.

62.      To carry out the purposes of this Distribution Plan, the Distribution Agent is authorized to make and implement immaterial changes to the Distribution Plan upon agreement with Commission staff. If a change is deemed to be material by Commission staff, Court approval is required prior to implementation by amending the Distribution Plan.

63.     The Distribution Agent may extend any procedural deadline contained in the Distribution Plan for good cause shown, if agreed upon by the Commission staff.

64.     The Distribution Agent is authorized to enter into agreements with institutions ("Institutions") as may be appropriate or necessary in the administration of the Fair Fund, provided such Institutions are not excluded pursuant to other provisions of this Distribution Plan. In connection with such agreements, the Institutions shall be deemed to be agents of the Distribution Agent under this Distribution Plan.

65.     The Distribution Agent will be entitled to reasonable administrative fees and expenses in connection with the administration and distribution of the Fair Fund (including any such fees and expenses incurred by agents, consultants or third parties retained by the Distribution Agent in furtherance of its duties).  The Distribution Agent will invoice all fees and expenses for the administration and distribution of the Fair Fund on a monthly basis directly to Commission staff.

66.     In the interests of timely paying the administration fees, distributing funds expeditiously, and conserving resources of both the Court and the SEC, the Commission now requests authorization for its staff to review, approve, and pay all future fees and expenses of the Distribution Agent from the Fair Fund, without further application or order from the Court.  All such payments of fees and expenses will be tracked and reported to the Court in a final accounting.

67.     The Distribution Agent may be removed at any time by the Court, and replaced with a successor.  In the event the Distribution Agent decides to resign, it will first give written notice to the Commission staff and the Court of such intention, and such resignation will not be effective until the Court has appointed a successor. The Distribution Agent will then follow such

instructions as such successor or the Court provides in turning over management of the Fair Fund.

68.     The Distribution Agent will retain all claims materials in paper and electronic form for a period of six (6) years after approval of the final report and final accounting and thereafter will transfer the documents to the Commission.  In addition, the Distribution Agent will shut down the website, P.O. Box, and customer service telephone line(s) established specifically for the administration of the Fair Fund three (3) months after the closing of the Escrow and Distribution Accounts, or at such earlier time as the Distribution Agent determines with concurrence of the Commission staff.

## IX.  **Tax Compliance**

69.     The Fair Fund is a Qualified Settlement Fund ("QSF") under Section 468B(g) of the Internal Revenue Code, 26 U.S.C. § 468B(g), as amended. The Tax Administrator is the administrator of such QSF for purposes of Treas. Reg. § 1.468B-2(k)(3)(I), and shall satisfy the tax related administrative requirements imposed by Treas. Regs. § 1.468B-1 to § 1.468B-5, including, but not limited to:

  a.     Obtaining a taxpayer identification number;

  b.     Submitting requests for funds from the Fair Fund that are necessary for the timely payment of all applicable taxes, making timely payment of taxes for which the Tax Administrator has received funds, and filing all applicable returns; and

  c.     Satisfying any information, reporting, or withholding requirements in connection with the distribution of the Fair Fund.

70.     When the Fair Fund is transferred to the Escrow Account for distribution, the Distribution Agent will tender to the Tax Administrator funds necessary to pay taxes upon the request of the Tax Administrator.  The SEC will approve and arrange payment of the tax obligations without further approval of the Court.

71.     All fees, costs, and expenses of the Tax Administrator will be paid by the Fair Fund as part of the cost of the administration of the Fair Fund.  Any taxes on interest earned by the Fair Fund will be paid by the Fair Fund.

**X.     Fair Fund Reporting and Accounting**

72.     The Distribution Agent will provide the Commission staff with a quarterly status report within forty-five (45) days of Court approval of this Distribution Plan, and will provide additional reports and quarterly account statements within thirty (30) days after the end of every quarter thereafter as detailed below.  The Commission staff shall provide this report to the Court upon request.

73.     Once the money has been transferred to the Escrow Account, a quarterly account statement, in a format to be provided by the Commission staff, shall be submitted with the status report by the Distribution Agent.

74.     The status report and quarterly account statement will inform the Court and the Commission staff of the activities and status of the Fair Fund during the relevant reporting period, and once funds are transferred to the Distribution Agent will specify, at a minimum:

        a.      The location of the account(s) comprising the Fair Fund; and

        b.      An interim accounting of all monies in the Fair Fund as of the most recent month-end, including the value of the account(s), all monies earned or received into the account(s), funds distributed to Eligible Claimants under

this Distribution Plan, and any monies expended from the Fair Fund to satisfy any fees, costs, taxes and other expenses incurred in the implementation of this Distribution Plan.

75.    The Distribution Agent will prepare a final report and final accounting, in a format to be provided by the Commission staff, when the Fair Fund administration is complete.  In compiling the final accounting, the Distribution Agent will coordinate with the Tax Administrator.  The Commission staff will file the final report and final accounting with the Court.

76.    Commission staff, or other relevant party, shall provide the Distribution Agent with any and all account information relating to the Fair Fund that may be required to meet reporting obligations, including providing copies of any account statements that the Distribution Agent may request.

## XI.    <u>Termination of the Fair Fund</u>

77.    Once all Distribution Payments have been negotiated or voided, any funds remaining in the Escrow and Distribution Accounts will be transferred to the Commission.

78.    The Fair Fund will be eligible for termination and the Distribution Agent will be eligible for discharge after all of the following have occurred:

       a.    A final report and accounting has been submitted to by the Court;

       b.    All taxes have been paid; and

       c.    All remaining funds have been transferred to the Commission.

79.    Once the Fair Fund has been terminated, no further claims will be allowed and no additional payments will be made whatsoever.

## XII.  Limitation of Liability

80.    The Court reserves the right to amend this Distribution Plan from time to time, and retains exclusive jurisdiction over all claims arising in connection with this Distribution Plan, including, but not limited to, claims against the Distribution Agent asserting liability for violation of any duty imposed by this Distribution Plan or other Court order.

81.    The Distribution Agent is entitled to rely on all outstanding rules of law and Court orders.  The Distribution Agent will not be liable to anyone, except the Commission, on behalf of the Fair Fund for a pecuniary loss to the Fair Fund, for any action taken or omitted by the Distribution Agent in connection with the Distribution Plan and all Potential Claimants will have no claims against the Distribution Agent, its employees, agents, and attorneys in connection with the Distribution Plan and the administration of the Fair Fund, and will be deemed enjoined from prosecuting or asserting any such claims, except upon a finding by this Court of gross negligence or reckless disregard of duty under this Distribution Plan.

82.    The submission of the Proof of Claim Form and the receipt and acceptance of a distribution by an Eligible Claimant will not affect an Eligible Claimant's rights and claims as against any party (other than the Distribution Agent), including, without limitation, Defendants and Defendants' past or present directors, officers, employees, affiliates, nominees, creditors, advisors and agents.

## XIII. Notice and Comment Period

83.    Notice of the Distribution Plan will be published on the website established by the Distribution Agent for this matter at www.BengerFairFund.com.  Any person or entity wishing to comment on the Distribution Plan must do so in writing by submitting their comments within thirty (30) calendar days of the date of notice to the Distribution Agent.

## Appendix I – Benger Fair Fund Plan of Allocation

**Overview**

Only common shares of China Voice Holding Corp., Biomoda, Inc., Pharma Holdings Inc., World Energy Solutions, Inc., Revolutions Medical Corp., Earthsearch Communications, Inc., and Essential Innovations Technology Corp. purchased from the Defendants outside of the United States (the "Eligible Securities") on or between March 1, 2007 and continuing until February 28, 2009, inclusive (the "Relevant Period"), are eligible for damages. As a result of Final Judgments (as defined in the Plan of Distribution), and other recoveries, funds in excess of $1.3 million plus interest have been recovered and will be distributed as part of a Fair Fund distribution after deducting certain fees and claims administration expenses.

The objective of the Plan of Allocation is to equitably distribute the Fair Fund to those Eligible Claimants who suffered economic losses as a result of the violations of the federal securities laws. The Plan of Allocation is not a formal damages analysis.

The calculations made pursuant to the Plan of Allocation are not intended to be estimates of the amounts that Eligible Claimants might have been able to recover. Nor are the calculations pursuant to the Plan of Allocation intended to be estimates of the amounts that will be paid to Eligible Claimants. The calculations under the Plan of Allocation are only a method to weigh the claims of an Eligible Claimant against all other Eligible Claimants for the purposes of making *pro rata* allocations of the Fair Fund.

The Plan of Allocation generally measures the amount of eligible loss that an Eligible Claimant can claim for purposes of making *pro rata* allocations of the Fair Fund to Eligible Claimants.

In this case, the Commission obtained final judgments in *SEC v. Benger, et al.* against certain companies and individuals, finding them liable for fraud, and ordering them to pay disgorgement, prejudgment interest, and civil penalties.

In order to have an eligible loss, the Potential Claimant must have purchased or acquired the Eligible Securities during the Relevant Period from the Defendants. The Relevant Period was determined to be the period during which the alleged fraud was in effect.

**Calculation of Eligible Loss Amounts**

The sum of an Eligible Claimant's Eligible Loss Amounts (as calculated below) will be the investor's "Recognized Claim."

An "Eligible Loss" Amount (as defined below) will be calculated for each Potential Claimant per Eligible Security. To the extent there are sufficient funds in the Fair Fund, each Eligible Claimant will receive an amount equal to the Eligible Claimant's Recognized Claim. If, however, as expected, the amount in the Fair Fund is not sufficient to permit payment of the Recognized Claim of each Eligible Claimant, then each Eligible Claimant will be paid the percentage of the Fair Fund that each Eligible Claimant's Recognized Claim bears to the total of the Recognized Claims of all Eligible Claimants – thus, the Eligible Claimant's *pro rata* share of the Fair Fund.

A Potential Claimant's Eligible Loss Amount will be calculated as follows (where the prices mentioned exclude all fees and commissions). All Eligible Loss Amounts will be calculated in United States Dollars.

Eligible Securities purchased on or between March 1, 2007 and February 28, 2009, inclusive, are eligible for damages. The following summarizes the method for determining Eligible Loss Amounts for damage claims:

The total purchase price paid for shares of each Eligible Security during the Relevant Period will be totaled (the "Purchase Total") and multiplied by an excessive fee multiplier of 60% (the "Excessive Fees and Commissions Percentage"). The Excessive Fees and Commissions Percentage will be deemed the "Eligible Loss Amount" for purposes of the Plan of Allocation.

**Additional Provisions**

Open Market purchases or acquisitions of the Eligible Securities shall be deemed to have occurred on the "contract" or "trade" date as opposed to the "settlement" or "payment" date.

The receipt or grant by gift, inheritance, or operation of law of the Eligible Securities during the Relevant Period shall not be deemed a purchase, acquisition, or sale of these shares for the calculation of a Potential Claimant's Recognized Claim, nor shall the receipt or grant be deemed an assignment of any claim relating to the purchase/acquisition of such Eligible Securities unless (i) the donor or decedent purchased or acquired such shares in the open market during the Relevant Period; (ii) no Proof of Claim was submitted by or on behalf of the donor, on behalf of the decedent, or by anyone else with respect to such shares; and (iii) it is specifically so provided in the instrument of gift or assignment. In such instances, the recipient must provide documentation of the original open market purchase in addition to the transfer.

If a Potential Claimant is a surviving beneficiary of a person who purchased or acquired the Eligible Securities during the Relevant Period, that Potential Claimant may be entitled to their recovery from the Fair Fund. Potential Claimants should provide, along with a Proof of Claim Form, documentation to demonstrate their status, including a death certificate and Last Will and Testament, Letters Testamentary, evidence of probate and/or any other testamentary provisions of the deceased person.

An Eligible Claimant's Recognized Claim shall be the amount used to calculate the Eligible Claimant's *pro rata* share of the Fair Fund. If the sum total of Recognized Claims of all Eligible Claimants who are entitled to receive payment out of the Fair Fund is greater than the Fair Fund, each Eligible Claimant shall receive his, her, or its *pro rata* share of the Fair Fund. The *pro rata* share shall be the Eligible Claimant's Recognized Claim divided by the total of the Recognized Claims of all Eligible Claimants, multiplied by the total amount in the Fair Fund.

A payment to any Eligible Claimant that would amount to less than $10.00 in total will not be included in the calculation of the Fair Fund and no payment to these Eligible Claimants will be distributed.

If the Fair Fund exceeds the sum total amount of the Recognized Claims of all Eligible Claimants entitled to receive payment out of the Fair Fund, the excess amount in the Fair Fund shall be distributed to the U.S. Treasury.